433 S.E.2d 572

**Sarah E. GOINES and Curtis E. Goines, Plaintiffs Below, Appellants,**

**v.**

**Officer Jeffrey Goff JAMES, et al., Individually, and as Members of the Parkersburg City Police Department; and the City of Parkersburg, a Municipal Corporation, Defendants Below, Appellees.**

No. 21363.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Decided July 22, 1993.

Sarah Goines, pro se.

Steven M. McGowan, Andrew L. Paternostro, Steptoe & Johnson, Charleston, for appellees.

Larry N. Sullivan, Parkersburg, for Curtis E. Goines.

WORKMAN, Chief Justice:

This case is before the Court upon the appeal of Sarah Goines and Curtis Goines from an April 16, 1992, order of the Circuit Court of Wood County denying the Appellants' motion to set aside a jury verdict and grant a new trial. The Appellants filed suit on June 13, 1988, pursuant to 42 U.S.C.A. § 1983 (West 1981) based upon alleged violations of their Fourth Amendment rights.[1] On March 6, 1992, the jury returned a defense verdict.[2] The Appellants' primary contention turns upon the single issue of whether a police officer's conduct in following a misdemeanant in hot pursuit into the residence of a third party,[3] with neither a search warrant authorizing such entrance nor with permission of the owner, in order to effect the arrest of the misdemeanant constitutes a civil cause of action for which damages may be recov-

---

1. On March 5, 1992, during trial, the court directed a verdict in favor of the Defendant, Officer J. Hunley with regard to Appellant Curtis Goines' excessive force claim. On March 6, 1992, the trial court directed a verdict in favor of the Defendants Dyke, Hunley, Morgan, Sizemore and Steele as to Appellant Sarah Goines' claim of both excessive force and illegal entry. The only claims left for jury consideration were Curtis Goines' excessive force claim against all the Defendant officers except Officer Hunley and Sarah Goines' excessive force and illegal entry claim against Officer James. The City of Parkersburg also remained as a Defendant.

2. Specifically, the jury indicated through special interrogatories that: 1) exigent circumstances

did exist which justified Officer James' entry into the Goines' residence; 2) that Officer James did not use excessive and unreasonable force against the Plaintiff, Sarah Goines; and 3) that none of the Defendant officers used excessive and unreasonable force against the Plaintiff Curtis Goines. According to the Appellants' petition, only the illegal entry claim is the subject of this appeal.

3. Absent exigent circumstances such as hot pursuit, the Fourth Amendment prohibits searching a third-party residence for a suspect without a search warrant. *See Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

ered.[4] The Appellants argue that this warrantless search to effect a misdemeanor arrest was unconstitutional. The Appellees maintain that the police officers had the right to enter the Appellants' premises to effect the arrest. Moreover, the Appellees argue that regardless of what this Court decides on this underlying issue, the officers are entitled, as a matter of law, to the defense of qualified immunity in the civil action for damages because their conduct did not violate clearly established constitutional law. Based upon a review of the record, the parties' briefs and arguments and all other matters submitted before the Court in this matter,[5] we hold that the officers involved were entitled to qualified immunity[6] for their actions since the law concerning this constitutional issue was not clearly established. Accordingly, we affirm the decision of the circuit court.

## I.

On June 14, 1986, Officer Jeffrey James of the Parkersburg City Police Department was dispatched to respond to a complaint of disorderly conduct. Upon his arrival at the scene, Officer James observed a subject, later identified as Gary Shaffer, standing in front of the Appellants' home holding an open beer bottle. The officer testified that he observed Mr. Shaffer consume the contents of a beer bottle he had in his hand, while Mr. Shaffer stood in the street. Mr. Shaffer then broke the bottle by throwing it onto the street. Officer James exited his vehicle, approached Mr. Shaffer, and requested his identification. Mr. Shaffer refused to show the officer the requested identification and walked away from the officer into the Appellants' backyard.

Officer James followed Mr. Shaffer, but encountered the Appellant, Sarah Goines, before reaching him. The officer asked Ms. Goines if he could question Mr. Shaffer. When Ms. Goines responded that he could, the officer proceeded to enter the Appellants' backyard where Mr. Shaffer was standing in the middle of an ongoing party. When Officer James reached Mr. Shaffer in the backyard, he again asked Mr. Shaffer for identification. Mr. Shaffer again refused and walked away. At Appellant Sarah Goines' direction, Mr. Shaffer entered the Appellants' home through the back door.

Officer James followed Mr. Shaffer and when he reached him, the officer grabbed Mr. Shaffer in the doorway to the porch of the Appellants' home, but Mr. Shaffer pulled away, retreating into the house. Officer James proceeded into the home. At trial, the officer testified that he was arresting Mr. Shaffer for public intoxication. The officer also testified that he had no warrant for Mr. Shaffer's arrest, no search warrant to enter the premises, and no resident of the home had consented to or invited the officer to enter the premises.

Mrs. Goines alleges that the officer made an unprovoked assault upon her during his entry of the home, which caused serious bodily injury. Further, while Officer James was attempting to arrest Mr. Shaffer, the officer was confronted by Steven Goines, Appellant Sarah Goines' son. Steven Goines demanded that the officer produce a warrant and that the officer leave the premises. When the officer tried to explain that he had a right to be in the home to arrest Mr. Shaffer, a fight be-

4. The Appellants actually assign the following alleged errors: 1) the trial court failed to rule, as a matter of law, that the entry into the Goines' home by Officer James was illegal per se; 2) the trial court improperly allowed the jury to decide whether exigent circumstances existed which justified Officer James' entry into the Goines' residence; and 3) the trial court erred in giving or refusing to give certain instructions to the jury. The Appellants, however, maintain and this Court agrees that these errors are resolved when the above-mentioned primary contention is resolved.

5. When this Court granted the Appellants' motion for leave to move to reverse the judgment of the circuit court, we also allowed the Appellants to proceed with this appeal based solely upon the submission of the original record and the typewritten briefs of the parties. Since no transcript of the trial proceedings was required, the Court relies upon the parties' briefs in reciting facts relevant to this decision.

6. The record is clear that the Appellees offered instructions concerning qualified immunity, but the instructions were refused by the trial court.

tween the two ensued. Steven Goines was then arrested.

Other officers responding to the scene were directed into the Appellants' home by Officer Hunley to assist Officer James. It was during all this commotion that Curtis Goines claimed that he was struck by an object over the ear by an unidentified person who appeared to be a uniformed officer.[7]

## II.

### QUALIFIED IMMUNITY

■■ The issue before the Court is whether the police officers are entitled to qualified immunity to a civil claim. In *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982), the United States Supreme Court held that government officials, in the present case the police officers, are entitled to assert a qualified or "'good faith'" immunity[8] from individual liability for conduct arising during the performance of official duties. However, the police officers are only "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[9] *Id.* at 818, 102 S.Ct. at 2738. Therefore, in order to resolve this issue of qualified immunity, we must also examine the constitutional law pertaining to the Fourth Amendment to determine if the law was clearly established as to whether a warrantless arrest for a misdemeanor offense committed in an officer's presence permitted an officer in hot pursuit

of the suspect to enter the residence of a third party without a search warrant or the consent of the third party to effect the arrest. If the law was clearly established, that is if a statute existed or this Court or the United States Supreme Court had held the officers were violating the Appellants' Fourth Amendment rights by conducting a warrantless search of the Appellants' residence to effect an arrest of a misdemeanant whom the officers pursued into the residence in hot pursuit, then the qualified immunity defense should fail. *See id.* at 818–19, 102 S.Ct. at 2738–39. If, however, the officer's "duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequence.'" *Id.* at 819, 102 S.Ct. at 2739. (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)).

According to the Supreme Court of Michigan in *Guider v. Smith,* 431 Mich. 559, 571 431 N.W.2d 810, 815 (1988), since the United States Supreme Court defined the limits of qualified immunity in terms of an objective reasonableness standard of good faith, "[w]hat the defendant [police officer] believed at the time of the incident ... is irrelevant to a determination of the threshold question whether the defendant's undisputed conduct violated clearly established law." *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. If, however, the law was clearly established, the immunity defense should fail unless "the ... [officer] pleading the defense claims extraordinary cir-

---

**7.** We note again that the claim of excessive force is not before us in any way, as no appeal was taken to the circuit court's ruling on this matter.

**8.** It is undisputed that police officers are not entitled to absolute immunity. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

**9.** We note at the outset that under State law, the officer would have been immune from personal tort liability as a matter of law pursuant to West Virginia Code § 29–12A–5(b) (1992) and this Court's decision in *Beckley v. Crabtree,* 189 W.Va. 94, 428 S.E.2d 317 (1993). In syllabus point 1 of *Beckley,* we held that

West Virginia Code § 29–12A–5(b) provides that employees of political subdivisions are immune from personal tort liability unless '(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code.'
Clearly, none of the officers' conduct regarding the entry into the Appellants' home met any of the exceptions for which personal tort liability might be imposed. *See id.* at 95, 428 S.E.2d at 318.

cumstances and can prove that he neither knew nor should have known of the relevant legal standard...." *Id.* at 819, 102 S.Ct. at 2738.

Accordingly, the United States Supreme Court in *Harlow* directed that in cases such as these, the lower court judge may determine on summary judgment [10]

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed.

*Id.* at 818, 102 S.Ct. at 2738 (footnote omitted).

Consequently, we now turn to an examination of federal and State law in order to ascertain whether the constitutional law surrounding the Appellants' Fourth Amendment rights was clearly established at the time the officer's conduct occurred, thereby enabling this Court to ascertain whether the officers are entitled to qualified immunity as a matter of law.

## WARRANTLESS SEARCH

In *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), police officers attempted to effect a warrantless felony arrest of the defendant for selling drugs while she was standing in the door of her home. The defendant, however, retreated into her home before the arrest occurred. The officers, without a search warrant, followed her into the house and arrested her there. *Id.* at 40, 96 S.Ct. at 2408.

The United States Supreme Court, examining the exigent circumstance of hot pursuit, upheld the warrantless arrest and search, stating that "a suspect may not defeat an arrest which has been set in motion in a public place, ... by the expedient of escaping to a private place." *Id.* at 43, 96 S.Ct. at 2410. The Supreme Court also addressed the hot pursuit exception and found that

> 'hot pursuit' means some sort of a chase, but it need not be an extended hue and cry 'in and about [the] public streets.' The fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into Santana's house.

*Id.*

Subsequently in *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), a witness observed a car which was being driven erratically and which eventually swerved off the road. The driver got out of the car and walked away from the scene. When the police arrived a few minutes later, the witness told the officer that the driver was either sick or intoxicated. After ascertaining the identification of the owner of the vehicle [the petitioner Welsh], the police went to his home without a warrant. The petitioner's step-daughter allowed the police to enter the petitioner's home.[11] The officers found the petitioner lying naked in bed. *Id.* at 742–43, 104 S.Ct. at 2093–94. The petitioner was arrested for a first offense driving while under the influence of an intoxicant, which in Wisconsin was a noncriminal violation subject only to a civil forfeiture proceeding for a maximum $200 fine. *Id.* at 743 and 746, 104 S.Ct. at 2094 and 2095.

---

10. The record indicates that in "Defendants' Motion For Summary Judgment" filed with the lower court on October 9, 1991, the Defendants requested that summary judgment be entered since there existed "no genuine issue as to any material fact in this matter inasmuch as the individual defendant officers did not deprive the plaintiffs of a clearly established constitutional right...."

11. The Supreme Court assumed, for the purposes of their decision, that there was no valid consent to enter the petitioner's home. *Welsh,* 466 U.S. at 743 n. 1, 104 S.Ct. at 2094 n. 1. However, the Court indicated that on remand, "the state courts may consider whether the petitioner's arrest was justified because the police had validly obtained consent to enter his home." *Id.* at 755 n. 15, 104 S.Ct. at 2100 n. 15.

In *Welsh*, the Supreme Court, in determining whether the petitioner's arrest was in violation of the Fourth Amendment, held in a case not involving any exigent circumstances, that the "warrantless, nighttime entry into the petitioner's home to arrest him for a civil [nonjailable] traffic offense[,]" constituted a violation of the petitioner's Fourth Amendment rights. *Id.* at 754, 104 S.Ct. at 2100. The Supreme Court relied upon its prior decision in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), in which the Court held that "warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause [to believe the felony offense has been committed] and exigent circumstances." *Welsh*, 466 U.S. at 749, 104 S.Ct. at 2097 (citing *Payton*, 445 U.S. at 583–90, 100 S.Ct. at 1378–82).

While the Supreme Court stated that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense ... has been committed[,]" there was no definitive holding or even dicta by the Court which would clearly establish under what circumstances a warrantless home arrest upon hot pursuit from a commission of a misdemeanor in the officer's presence would constitute a Fourth Amendment violation.[12] *Id.* at 753, 104 S.Ct. at 2099.

The closest the Supreme Court came to shedding any light on the present issue before this Court came in the *Welsh* decision after the Supreme Court noted that most jurisdictions had not permitted warrantless home arrests for nonfelonious crimes,[13] but recognized that some courts had when exigent circumstances were present.[14] The Supreme Court stated "without necessarily approving any of these particular holdings or considering every possible factual situation, we note that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Id.* Unfortunately, the Supreme Court is simply not clear about what it considers to be an "extremely minor offense."[15] *Id.* Moreover, just because it is "difficult to conceive" of circumstances which would warrant such an arrest does not mean it is impossible to conceive of circumstances, especially exigent circumstances, in which the Court would consider as justifying a warrantless home arrest for a misdemeanor offense.[16] *Id.*

The unsettled nature of this constitutional question was yet again highlighted by

**12.** In fact, at least one legal scholar has stated that "Justice Brennan's opinion implicitly suggested that a warrantless home arrest for a minor offense might be reasonable if the police were in hot pursuit of an offender or if the offender constituted a threat to public safety." William A. Schroeder, *Factoring the Seriousness of the Offense into Fourth Amendment Equations—Warrantless Entries into Premises: The Legacy of Welsh v. Wisconsin*, 38 Kan.L.Rev. 439, 446 (1990).

**13.** *See State v. Guertin*, 190 Conn. 440, 461 A.2d 963 (1983); *People v. Strelow*, 96 Mich.App. 182, 292 N.W.2d 517 (1980); *see also People v. Sanders*, 59 Ill.App.3d 6, 16 Ill.Dec. 437, 374 N.E.2d 1315 (1978) (warrantless entry not justified in felony which was not grave offense); *State v. Bennett*, 295 N.W.2d 5 (S.D.1980) (finding absence of exigent circumstances justifying warrantless entry for felony).

**14.** *But Cf. In re Lavoyne M.*, 221 Cal.App.3d 154, 270 Cal.Rptr. 394 (1990); *Gasset v. State*, 490 So.2d 97, *review denied*, 500 So.2d 544 (Fla. 1986); *Lepard v. State*, 542 N.E.2d 1347 (Ind.

App.1989); *State v. Pease*, 520 A.2d 698 (Me. 1987); *State v. Penas*, 200 Neb. 387, 263 N.W.2d 835 (1978); *State v. Niedermeyer*, 48 Or.App. 665, 617 P.2d 911, *review denied*, 290 Or. 249 (1980), *cert. denied*, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 239 (1981); *State v. Ramirez*, 814 P.2d 1131 (Utah App.1991); *see also State v. Hamilton*, 710 P.2d 174 (Utah 1985) (upholding warrantless search and arrest of suspect on third-party premises for failure to yield misdemeanor because of hot pursuit exception).

**15.** *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 6.1(f) at 599 (2d ed. 1987) ("[T]he Court's more general reference to all situations where 'the underlying offense is extremely minor' creates still more uncertainty for police and courts as they try to work out the exigent circumstances calculus.").

**16.** *See Schroeder, supra* note 8, at 470 (" 'difficult to conceive' language ... in *Welsh* leave[s] openings for the court to uphold warrantless entries made in hot pursuit of minor offenders").

this Court's decision in *Bennett v. Coffman,* 178 W.Va. 500, 361 S.E.2d 465 (1987), decided approximately one year after the facts forming the basis of the present appeal occurred. In *Bennett,* the police officers went to a bar in response to a disturbance call. The officers were told by the proprietor of the bar that the defendant, Mr. Bennett, had assaulted him and caused property damage before leaving the bar in an extremely intoxicated state. Meanwhile, the defendant had phoned the police station and requested to meet with officers. *Id.* at 501, 361 S.E.2d at 466. The officers proceeded to the defendant's home, but found no one there. As they were driving away, they encountered the defendant driving a car towards the officer's vehicle and the car was left of center. The defendant pulled the car into his driveway. The officers pursued. The defendant ran around to the back of his home and the officers followed. The officers proceeded to search for the defendant, but to no avail. After about an hour, one officer observed the defendant enter his house. *Id.* The officers then knocked on the door and Willard Westfall answered. Mr. Westfall indicated that the defendant was not in the house. The officers entered the home, without Mr. Westfall's consent. The officers found the defendant hiding under a bed. *Id.*

■ This Court ultimately held that:

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.

*Id.* at 500, 361 S.E.2d at 465, Syllabus; *see State v. Chase Sec., Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992). In rendering the above-mentioned holding, however, this Court first had to distinguish the *Welsh* case. We did so on the basis that in *Bennett,* the doctrine of hot pursuit clearly applied and that in West Virginia, driving while intoxicated was a serious traffic offense. More importantly, we also noted in distinguishing the *Welsh* decision, *"the substantial difference of opinion among the justices of the U.S. Supreme Court [on the issue of a warrantless home entry to effect a misdemeanor arrest] as expressed in Welsh 18 months after this incident...."* 178 W.Va. at 505, 361 S.E.2d at 470 (some emphasis added). These differences of opinions on this issue as reflected by the Supreme Court in the non-unanimous *Welsh* decision only serve to demonstrate how murky the waters remain and how unclear the law is in this area of search and seizure.

■ While it is clear that in West Virginia a police officer can effect a warrantless arrest for the serious misdemeanor of driving under the influence by following the misdemeanant into his own home in hot pursuit, without a warrant, we find it unnecessary to resolve the constitutionality of a warrantless arrest for other types of less serious misdemeanors where that arrest occurs after a police officer has followed the offender in hot pursuit into a third-party residence. Whatever the outcome were we to answer that substantive question, it is sufficient in this case to conclude that even if such an arrest was unconstitutional, the law thereon was not clearly established at the time of the officer's conduct, and consequently, the officer is entitled to qualified immunity from civil liability.

■ Consequently, we hold that under the doctrine of qualified immunity, a police officer is absolved from civil liability for following a misdemeanant in hot pursuit into the residence of a third party, with neither a warrant nor the permission of the third party, in order to effect a warrantless arrest of the misdemeanant, so long as such entry violates no clearly established statutory or constitutional rights.

For the foregoing reasons, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.