655 S.E.2d 528

Grady Colin KELLEY, II, and Frieda
Carol Kelley, Plaintiffs Below,
Appellants

v.

The CITY OF WILLIAMSON, WEST VIR-
GINIA, A Municipal Corporation, and
Michael Barnes, Individually and in his
Capacity of a Police Officer Employed
by the City of Williamson, Defendants
Below, Appellees.

No. 33311.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 19, 2007.

Decided Nov. 21, 2007.

Thomas M. Plymale, Plymale & Maddox, PLLC, Huntington, for the Appellants.

Duane J. Ruggier, II, Katherine MacCallum Nichols, C. Scott Applegate, Pullin, Fowler & Flanagan, PLLC, Charleston, for the Appellee, The City of Williamson.

David J. Mincer, Vaughn T. Sizemore, Bailey & Wyant, PLLC, Charleston, for the Appellee, Michael Barnes.

PER CURIAM:

Grady Colin Kelley, II, and Frieda Carol Kelley (hereinafter "Appellants" or "Mr. Kelley and Mrs. Kelley") appeal from orders of the Circuit Court of Mingo County granting summary judgment to Appellees City of Williamson and Williamson police officer Michael Barnes. The Appellants allege that the trial court erred in granting summary judgment where genuine issues of material fact exist for jury determination in the underlying civil actions which were initiated by the Appellants as a result of the issuance of a citation to Mr. Kelley and the arrest of Mrs. Kelley in the early morning hours of July 23, 2000, in the City of Williamson. Subsequent to thorough review of the record, arguments of counsel, and applicable precedent, this Court reverses the orders of summary judgment and remands these matters to the trial court for additional proceedings consistent with this opinion.

## I. Factual and Procedural History

On July 23, 2000, Appellant Mr. Kelley closed the bar he operated in Williamson, West Virginia, called "Colie's Club," and he proceeded toward his home in his automobile, with several other passengers in the vehicle. During the ride home, Mr. Kelley realized that he had left a cash bag at the bar, and he returned to the bar to retrieve the bag. Once at the location of the bar, Mr. Kelley went inside and asked his passengers to wait in the small entrance area between the bar's outer and inner doors. Mr. Kelley retrieved the cash bag and proceeded toward the front of the bar to leave. He was greeted by Officer Michael Barnes of the Williamson Police Department. Mr. Kelley contends that Officer Barnes told Mr. Kelley, "I told you I got you. I was going to get you." Mr. Kelley maintains that animosity had existed between Mr. Kelley and Officer Barnes based upon prior incidents.[1]

As Officer Barnes escorted Mr. Kelley and his companions out of Colie's Club, Mr. Kelley maintains that Officer Barnes pushed him against the police cruiser. After Officer John Hall arrived at the scene, Mr. Kelley and the others were taken to the Williamson Police Department. Mr. Kelley was issued a citation for the violation of ABCC regulations requiring private clubs to be vacated by 3:30 a.m. on Sunday mornings. *See* CSR 175–2–

---

1. The Appellants contend that Officer Barnes' brother had allegedly shot at Mr. Kelley, an act for which Officer Barnes' brother was convicted on wanton endangerment charges. The Appellants also assert that Mr. Kelley had removed Officer Barnes from Colie's Club due to Officer Barnes' alleged intoxication and aggressive behavior. The Appellants contend that Officer Barnes had threatened to gain retribution against Mr. Kelley. Officer Barnes also allegedly had maintained a romantic relationship with Ms. Reva Ruble, owner of a rival bar, and Officer Barnes had allegedly made statements about his financial interest in Ms. Ruble's bar. Mr. Kelley also claimed that Officer Barnes had routinely parked his police cruiser outside Colie's Club in an effort to damage Mr. Kelley's business and harass customers.

4.7 and 175–2–4.8.[2] To prove the allegations asserted against Mr. Kelley, it would have been necessary for Officer Barnes to prove that Mr. Kelley was in the bar after 3:30 a.m. That essential fact is in dispute. The criminal citation filed on July 23, 2000, indicates that the offense occurred at 4:30 a.m., but the statement Officer Barnes made in the criminal complaint sworn before Magistrate Greene on January 22, 2001, indicates that it occurred "after the hour of 4:00 a.m." According to Mr. Kelley, he did not know precisely what time he was retrieving the cash bag from the bar, but he testified that "it was close" to 3:30 a.m.[3] Mr. Kelley telephoned his family at approximately 4:00 a.m. to inform them that he was in custody at the police station.

Upon learning that her son was in custody, Appellant Mrs. Kelley and her husband, Colin Kelley, Sr., proceeded to the Williamson Police Department. Mrs. Kelley testified that, upon arriving at the police station, she informed Officer Barnes that she was concerned for the safety of her son and nephew, one of the passengers in Mr. Kelley's automobile. All parties agree that Officer Barnes asked Mrs. Kelley to leave the police station, alleging that she was behaving in a disruptive manner. Mrs. Kelley informed the officers that she refused to leave without her son and nephew. Mrs. Kelley was eventually handcuffed and arrested for disorderly conduct and willful disruption of a governmental process.[4] Mrs. Kelley denies allegations that she interfered with the performance of the officers' duties, behaved in a rude and aggressive manner, used profanity, and employed racial slurs toward Officer Barnes.[5]

Mr. Kelley and Mrs. Kelley filed separate lawsuits against Officer Barnes and the City of Williamson.[6] Mr. Kelley's complaint asserted four causes of action: the tort of outrage; battery; false swearing by Officer Barnes in the criminal complaint; and negligence by the City in hiring and supervising Officer Barnes. Mrs. Kelley's complaint asserted four causes of action: the tort of outrage; intentional infliction of emotional distress; battery; and false swearing by Officer Barnes. The two actions were consolidated by order dated April 17, 2005, but the trials were scheduled to be bifurcated.

Upon motions for summary judgment filed by Officer Barnes and the City, the trial court found that the arrest of Mrs. Kelley and the citation issued to Mr. Kelley were lawful and proper.[7] The trial court granted

2. The regulations require that all clubs shall be cleared of all persons thirty minutes after the sale of alcohol has expired, which in this instance would have been 3:30 a.m. Mr. Kelley was also issued a citation pursuant to West Virginia Code § 60–7–12(a)(11) (1996) (Repl.Vol.2005), which provides that it is illegal for a licensee of a private club to "[v]iolate any reasonable rule of the Commissioner."

3. The testimony regarding Mr. Kelley's recollection of the time proceeded as follows:

Q. ·Okay. Would that have been after 3:30? [Going back to retrieve the money bag]
A. It was probably—yeah, it was close because I close a few minutes early, I try to close a few minutes early . . . ."

4. West Virginia Code § 61–6–1b(a) (2002) (Repl. Vol.2005) provides, in pertinent part, as follows:

Any person who, in a public place, any office or office building of the state of West Virginia, or in the state capitol complex, or on any other property owned, leased, occupied or controlled by the state of West Virginia, a mobile home park, a public parking area, a common area of an apartment building or dormitory, or a common area of a privately owned commercial shopping center, mall or other group of commercial retail establishments, disturbs the peace of others by violent, profane, indecent or boisterous conduct or language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another person, and who persists in such conduct after being requested to desist by a law-enforcement officer acting in his lawful capacity, is guilty of disorderly conduct, a misdemeanor. . . .

West Virginia Code § 61–6–19 (2002) (Repl.Vol. 2005) provides: "[i]f any person willfully interrupts or molests the orderly and peaceful process of any department, division, agency or branch of state government or of its political subdivisions, he or she is guilty of a misdemeanor. . . ."

5. Officer Barnes contends that Mrs. Kelley used derogatory language concerning his African American race. Officer Hall's testimony supports that of Officer Barnes.

6. Robin Maynard, Doug Ward, and Donald Wilkerson, passengers in Mr. Kelley's vehicle, also filed suit against Officer Barnes and the City, and those cases were resolved through settlement.

7. Prior to the summary judgment motions, the outrageous conduct, battery, and false swearing

summary judgment to Officer Barnes on the Mr. Kelley action by order entered January 10, 2006; summary judgment to Officer Barnes on the Mrs. Kelley action by order entered March 17, 2006; summary judgment to the City on the Mrs. Kelley action by order entered April 10, 2006; and summary judgment to the City on the Mr. Kelley action by order entered April 21, 2006. This Appellants assert that the trial court erred in granting summary judgment to the City and Officer Barnes, contending that genuine issues of material fact exist which should preclude the granting of summary judgment.

## II. Standard of Review

Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record reveals that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.Va. R. Civ. Pro. 56(c); *see also Hager v. Marshall*, 202 W.Va. 577, 505 S.E.2d 640 (1998). In examining a trial court's entry of summary judgment, this Court applies a *de novo* standard of review. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*").

This Court has repeatedly stated that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). In syllabus point four of Aetna Casualty, this Court explained: "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact."

In determining whether a genuine issue of material fact exists, this Court construes the facts in the light most favorable to the party against whom summary judgment was granted. *Alpine Prop. Owners Assn. v. Mountaintop Dev. Co.*, 179 W.Va. 12, 365 S.E.2d 57 (1987). Syllabus point six of *Aetna Casualty* also explains: "A party who moves for summary judgment has the burden of showing that there is no genuine issue of material fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." [8]

With regard to determination of a summary judgment motion, this Court has stated that "[t]he essence of the inquiry the court must make is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 61, 459 S.E.2d 329, 338 (1995) (citations omitted). Particularly in "complex cases . . . where issues involving motive and intent are present," summary judgment should not be utilized as a method of resolution. *See Masinter v. WEBCO Co.*, 164 W.Va. 241, 243, 262 S.E.2d 433, 436 (1980).

With these standards as guidance, we examine the assertions of the Appellants in this matter.

## III. Discussion

The Appellants contend that the trial court erred in granting summary judgment to Officer Barnes and the City on the claims asserted by the Appellants. A pivotal foundational issue was raised by Officer Barnes and must be addressed prior to further discussion. Officer Barnes contends that the provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act govern this matter. Specifically, with regard to Office

---

charges against the City were dismissed, leaving only the negligence in supervision charge to be resolved by summary judgment.

8. Syllabus point five of *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995), defines "genuine issue" in the following manner:

Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Barnes, West Virginia Code § 29–12A–5(b) (1986) (Repl.Vol.2004) provides as follows:

An employee of a political subdivision is immune from liability unless one of the following applies:

(1) His or her acts or omissions were *manifestly outside the scope of employment or official responsibilities;*

(2) His or her acts or omissions were with *malicious purpose, in bad faith, or in a wanton or reckless manner;* or

(3) Liability is expressly imposed upon the employee by a provision of this code.

W.Va.Code § 29–12A–5(b) (emphasis supplied). Thus, Officer Bames, as an employee of the City, cannot be held liable for his alleged actions in this case unless one of the specific conditions has been satisfied.

■ These statutory pronouncements were reiterated and examined by this Court in *Beckley v. Crabtree,* 189 W.Va. 94, 428 S.E.2d 317 (1993). Syllabus point one of *Beckley* provides a restatement of the statutory rule, as follows:

West Virginia Code § 29–12A–5(b) provides that employees of political subdivisions are immune from personal tort liability unless "(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code."

*See also Goines v. James,* 189 W.Va. 634, 637, 433 S.E.2d 572, 575 (1993), *cert. denied,* 510 U.S. 1057, 114 S.Ct. 721, 126 L.Ed.2d 686 (1994).

With respect to the immunity provisions potentially applicable to the Appellants' claims against the City, West Virginia Code § 29–12A–4(b)(1) (1986) (Repl.Vol.2004) provides, in pertinent part, as follows:

Except as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. . . .

W. Va.Code § 29–12A–4(b)(*l* ). However, potential liability is referenced in West Virginia Code § 29–12A–4(c)(2), as follows: "Political subdivisions are liable for injury, death, or loss to persons or property caused by the *negligent performance of acts by their employees while* acting within the scope of employment." W.Va.Code § 29–12A–4(c)(2) (emphasis supplied). If, for example, a jury were to conclude that Officer Barnes acted negligently, within the scope of his employment, in handling matters related to Mr. Kelley or Mrs. Kelley, the City would not enjoy immunity and would be liable for Officers Barnes' acts of negligence.

The methodology for addressing these threshold immunity questions was provided by this Court in *Hutchison v. City of Huntington,* 198 W.Va. 139, 479 S.E.2d 649 (1996). In *Hutchison,* this Court grappled with the question of when the immunity determination is to be made and whether the trier of fact must determine underlying factual conflicts prior to the trial court's determination of the immunity applicability. This Court explained as follows in *Hutchison:*

Though it is the province of the jury to determine disputed predicate facts, the question of whether the constitutional or statutory right was clearly established is one of law for the court. In this connection, it is the jury, not the judge, who must decide the disputed "foundational" or "historical" facts that underlie the immunity determination, but it is solely the prerogative of the court to make the ultimate legal conclusion.

198 W.Va. at 149, 479 S.E.2d at 659. The *Hutchison* Court also explained that the immunity issue should be "heard and resolved prior to any trial because, if the claim of immunity is proper and valid, the very thing from which the defendant is immune—a trial will—absent a pretrial ruling occur and cannot be remedied by a later appeal." *Id.* at 149, n. 13, 479 S.E.2d at 659, n. 13.

The Minnesota court thoroughly examined this conundrum in *Baker v. Chaplin,* 517 N.W.2d 911 (1994), *cert denied,* 513 U.S.

1077, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995), and observed that even discovery should ordinarily "not be allowed until this threshold immunity question is resolved." 517 N.W.2d at 914, n. 3; *see also Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In *Baker,* the court recognized that "[a]lthough qualified immunity is 'in part an entitlement not to be forced to litigate,' when the law is clearly established, immunity from trial is appropriate only when the plaintiff has not demonstrated any genuine issues of material fact which must be resolved to determine whether the defendant's actions were reasonable under clearly established law." *Id.* at 916 (footnote omitted) (emphasis provided). In *Baker,* additional facts and circumstances were in dispute, and the court stated that "[t]his court cannot decide as a matter of law whether the officer's actions in this case were reasonable without a finding of fact as to what those actions and the surrounding facts and circumstances were." *Id.* at 917.

The *Baker* court held that "[b]ecause applying the law in this case requires the establishment of predicate facts, we remand to the district court for trial." *Id.*

Upon determination of the underlying factual issues by the finder of fact, the trial court may make another *legal* determination regarding the issue of the reasonableness of Chaplin's actions, and may find that Chaplin does enjoy qualified immunity from liability. Our holding is limited to our conclusion that Baker has submitted sufficient evidence to demonstrate genuine issues of material fact in dispute and evidence to support factual findings that would place the conduct at issue outside the protection of qualified immunity.

*Id.* at 917, n. 10.

Similarly, in *Brescher v. Pirez,* 696 So.2d 370 (Fla.App.1997), the Florida court observed that "[w]here the facts upon which the determination of qualified immunity hinges are in dispute, then those facts may require a jury determination." 696 So.2d at 374; *see also Butler v. City of Norman,* 992 F.2d 1053 (10th Cir.1993) (holding that factual issues precluded officers' summary judgment where plaintiff's deposition stated that

officers beat him with flashlight when his hands were handcuffed behind his back).

In examining the factual findings that must underlie the immunity determination in the present case, this Court remains mindful that the evidence must be viewed in a light most favorable to the Appellants and that summary judgment should be denied where varying inferences could be drawn from the evidence. Officer Barnes claims entitlement to qualified immunity based upon his assertion that his citation to Mr. Kelley, his role in Mrs. Kelley's arrest, and the filing of criminal complaints did not violate any clearly articulated statutes, laws, or regulations. Officer Barnes further contends that he did not act in bad faith, maliciously, or wantonly and recklessly toward the Appellants.

██  Examining the facts as presented in the record, Mrs. Kelley was charged with willful disruption of a governmental process, obstructing an officer, and disorderly conduct when she appeared at the Williamson police station after being informed by her son that he had been detained. In granting summary judgment for Officer Barnes on Mrs. Kelley's claim, the trial court indicated that "no dispute exists as to the facts material to the adjudication of the sole issue of the case, whether the arrest ... was lawful." A complete reading of the record would suggest otherwise. A jury could conclude that Officer Barnes did not have a legitimate basis for arresting Mrs. Kelley for her behavior at the police station. The jury could possibly find that Officer Barnes' involvement in the charges of willful disruption of a governmental process and disorderly conduct were in bad faith or with malicious purpose. The evidence, when viewed in a light most favorable to Mrs. Kelley, would support a jury finding that she was simply a concerned mother going to the police station where her son was being processed for violation of an ABCC regulation. Mrs. Kelley testified that she was aware of the history of animosity between her son and Officer Barnes and that she was particularly distressed by her knowledge of Officer Barnes' reputation for violence. According to Mrs. Kelley's version of the facts, the allegations of unruly behavior, disruption, racial slurs, and profane language

are greatly exaggerated. Other than admitting that she used an expletive to reference a bodily function that would occur if the officers would not permit her to use a restroom, Mrs. Kelley specifically contests essentially every allegation against her. She denies any violent or boisterous action prior to her arrest.

With regard to Mr. Kelley, and viewing the evidence in a light most favorable to the Appellants, a jury could find that Officer Barnes had improper motives underlying his decision to arrive at Colie's Club at approximately the time it should have been vacated and in writing a citation to Mr. Kelley. A jury could also conclude that Officer Barnes used excessive force in dealing with an alleged violation of ABCC regulations or that the detention of Mr. Kelley and the citations against him were unlawful based upon the conflicting evidence regarding the precise time at which Officer Barnes observed Mr. Kelley in Colie's Club. These factual discrepancies and conflicts in testimony create genuine issues of material fact ripe for jury resolution. This is precisely the situation in which summary judgment should not be utilized.

In *Mallamo v. Town of Rivesville*, 197 W.Va. 616, 477 S.E.2d 525 (1996), for instance, this Court analyzed claims of immunity regarding a police chief and a municipality and ultimately held that summary judgment was precluded by the existence of a question of material fact regarding whether the police chief had conspired to conceal the truth surrounding the shooting of the plaintiff and whether such action was outside the scope of his employment or was with malicious purpose and in bad faith. 197 W.Va. at 623, 477 S.E.2d at 532. This Court found that the chief would not be immune from liability if a conspiracy to conceal the facts surrounding the shooting incident were proven since such concealment would be outside the scope of his employment, with malicious purpose, and in bad faith. *Id.*

The *Mallamo* Court also resolved the issue of the municipality's immunity by citing West Virginia Code § 29–12A–4(c)(2), as quoted above. This Court held "even if plaintiff were able to establish that [the chief] partici-

pated in a conspiracy to cover up the shooting incident, a plain reading of W.Va.Code, 29–12A–4(c)(2) [1986] would, nevertheless, not impose liability on the Town of Rivesville." *Id.* at 624, 477 S.E.2d at 533. The Court observed that West Virginia Code § 29–12A–4(c)(2) [1986] provides for political subdivisions liability for injury "caused by the negligent performance of acts by their employees while acting within the scope of employment." *Id.* "In that conspiracy is an intentional act, not a negligent one, the Town of Rivesville would not be liable for any intentional malfeasance on the part of [the chief]." *Id.*

## IV. Conclusion

The role of this Court is to review this matter *de novo* for the purpose of determining whether there are any genuine issues of material fact precluding summary judgment. This Court finds that genuine issues of material fact do exist in the present case, and summary judgment was not an appropriate method to dispose of the issues. Before any final resolution can be reached in this case, a jury must determine whether Officer Barnes acted in a negligent manner, thus subjecting the City to liability for his actions under West Virginia Code § 29–12A–4(c)(2), or if his acts were in bad faith, malicious, or wanton and reckless, thus subjecting Officer Barnes to liability under West Virginia Code § 29–12A–5(b). Based upon the foregoing evaluation, this Court reverses the lower court's orders granting summary judgment and remands this matter for further proceedings.

Reversed and Remanded.

Chief Justice DAVIS and Justice BENJAMIN dissent and reserve the right to file dissenting opinions.

DAVIS, C.J., dissenting:

The majority opinion reverses the lower court's grants of summary judgments. The reversal is based on the majority's assertion that genuine issues of material fact exist such that the case should have been submitted to the jury for decision. I disagree with the majority's contention that any genuine issues

of material fact exist; therefore, I respectfully dissent.

The circuit court's decisions were consistent with the standard for granting summary judgment. That is, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 1, *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 506 S.E.2d 578 (1998) (quotations and citation omitted). "The question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined." Syl. pt. 5, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). We have previously explained that

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). Finally, in Syllabus point 5 of *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995), we explained the meaning of "genuine issue" as follows:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Officer Barnes issued a citation to Mr. Kelley for violating ABCC regulations.[1] Pursuant to the ABCC regulations, it is undisputed that all persons, including patrons and employees, must be cleared from the club by 3:30 a.m. on Sunday mornings. In discussing the summary judgment granted in Mr. Kelley's case, the majority opinion states as follows:

> With regard to Mr. Kelley, and viewing the evidence in a light most favorable to the Appellants, a jury could find that Officer Barnes had improper motives underlying his decision to arrive at Colie's Club at approximately the time it should have been vacated and in writing a citation to Mr. Kelley. A jury could also conclude that Officer Barnes used excessive force in dealing with an alleged violation of ABCC regulations or that the detention of Mr. Kelley and the citations against him were unlawful based upon the conflicting evidence regarding the precise time at which Officer Barnes observed Mr. Kelley in Colie's Club. These factual discrepancies and conflicts in testimony create genuine issues of material fact ripe for jury resolution.

*See* Majority opinion, p. 535.

Based on my own review of the record, I simply cannot agree with the factual inter-

---

1. The applicable ABCC provisions provide as follows, in relevant part:

> Hours for sale of alcoholic beverages.-No licensee shall sell, give or dispense alcoholic liquor or nonintoxicating beer, or permit the consumption thereof, on any licensed premises or in any rooms directly connected therewith between the hours of three o'clock a.m. (3:00 AM) and one o'clock p.m. (1:00 PM) on any Sunday[.]

175 CSR § 2–4.7.

> Hours of operation—The licensed premises of all private clubs shall be closed for operation and cleared of all persons, including employees, thirty (30) minutes after the hours of sale of alcoholic liquors and nonintoxicating beer have expired. . . .

175 CSR § 2–4.8. Pursuant to W. Va.Code § 60–7–12 (1996) (Repl.Vol.2005): "(a) It is unlawful for any licensee, or agent, employee or member thereof, on such licensee's premises to: . . . . (11) Violate any reasonable rule of the Commissioner." Further,

> (c) Any person who violates any of the foregoing provisions is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than five hundred dollars nor more than one thousand dollars, or imprisoned in the county jail for a period not to exceed one year, or both fined and imprisoned.

*Id.*

pretations held by the majority. At the forefront of my decision, I must note that nowhere in the applicable regulations does it include a discretionary standard. The majority opinion implies that an officer has discretion in finding an ABCC violation when stating that "a jury could find that Officer Barnes had improper motives underlying his decision to arrive at Colie's Club at approximately the time it should have been vacated and in writing a citation to Mr. Kelley." *See* Majority opinion, *id.* In contrast, my reading of the applicable regulations is very simple: if anyone, whether patron or employee, is inside a private club after 3:30 a.m. on a Sunday morning, there is an ABCC violation. If a person violates the time limitations, that is an infraction of the regulation. I fail to understand how an officer who enforces a regulation with strict time components can possibly have an "improper motive" such that would warrant relieving the offender of any obligation. While I recognize that the record indicates that there is a negatively charged personal history between Officer Barnes and Mr. Kelley, there is nothing on the record to indicate that the officer induced or assisted Mr. Kelley in violating the regulation. Thus, when Mr. Kelley violated a strict regulation, he should have been held accountable, no matter who issued the citation or what their personal past relationship entailed.

As illustrated by the majority opinion, the crux of this determination is the time at which Mr. Kelley was found inside his bar. If it was before 3:30 a.m., there is no regulatory infraction. If it was after 3:30 a.m., he violated the ABCC regulations and is subjected to criminal penalty. The majority turns its decision on its perception that genuine issues of material fact exist as to what time Mr. Kelley was found inside the bar. While I agree that the time when Mr. Kelley was found in the bar is dispositive, one party's dislike of a particular fact is not sufficient to deem it a genuine issue of material fact such that summary judgment should be defeated.

The underlying record reveals that there is no true question as to what time Mr. Kelley was inside his bar, and further, that it was after 3:30 a.m. on a Sunday morning in viola-

tion of ABCC regulations. Even the deposition testimony of Mr. Kelley alleviates any question as to whether he was inside his bar after 3:30 a.m. During the deposition, the following exchange occurred regarding Mr. Kelley's return to his bar after realizing he left a cash bag on the premises:

Q. Okay. So all these guys ride back with you over to Colie's again?

A. Yeah

Q. What time do you think you got back to Colie's?

A. Probably around 3:30 maybe.

. . . .

Q. And you went inside to go get the money bag?

A. Yeah, and I made the rest of the guys come in with me because I still had the money bag with quarters in my vehicle.

In fact, when Officer Barnes approached the bar entrance and had one of the patrons get Mr. Kelley, Mr. Kelley never objected to the citation on the grounds that it was prior to 3:30 a.m. Mr. Kelley's objection to the citation was that he never turned on the lights while there and that he did not serve any drinks after 3:30 a.m. However, under the regulation, the only relevant factor is that people were present in the club after 3:30 a.m.

The majority opinion states that the timeframe is in question based on the citation, criminal complaint, and Mrs. Kelley's testimony; however, the record does not support this assertion. The citation states that the offense occurred at 4:30 a.m., and the criminal complaint states that it occurred "after the hour of 4:00 a.m." Both times are consistent with a regulatory infraction because they are after 3:30 a.m. on a Sunday morning. Further, during her deposition, Mrs. Kelley was questioned regarding the time that she learned her son, Mr. Kelley, was receiving a citation. In doing so, the following exchange happened:

Q. What time was it when he called?

A. Gosh, I don't remember. Approximately, probably around 4:00. It might have been later than that. I don't know.

This Court has previously stated that the non-moving party must, at a minimum, offer

more than a "scintilla of evidence" to support his or her claim. *Williams*, 194 W.Va. at 60, 459 S.E.2d at 337. Further,

> [t]he opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. *Williams*, 194 W.Va. at 60–61, 459 S.E.2d at 337–38. A material fact is one "that has the capacity to sway the outcome of the litigation under the applicable law." *Id.* at 60, 459 S.E.2d 329 [n. 13], 459 S.E.2d at 337 n. 13. As stated in *Anderson*, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson [v. Liberty Lobby, Inc.]*, 477 U.S. [242,] 248, 106 S.Ct. [2505,] 2510[, 91 L.Ed.2d 202 (1986)].

*Jividen*, 194 W.Va. at 714, 461 S.E.2d at 460. There is no evidence, other than the appellants' hopeful wishes, that it was before 3:30 a.m. when Officer Barnes found Mr. Kelley, along with several other people, in the club. Thus, the circuit court's grant of summary judgment was proper in relation to Mr. Kelley.

In regards to the arrest of Mrs. Kelley, the majority opines as follows:

> A jury could conclude that Officer Barnes did not have a legitimate basis for arresting Mrs. Kelley for her behavior at the police station. The jury could possibly find that Officer Barnes' involvement in the charges of willful disruption of a governmental process and disorderly conduct were in bad faith or with malicious purpose. The evidence, when viewed in a light most favorable to Mrs. Kelley, would support a jury finding that she was simply a concerned mother going to the police station where her son was being processed for violation of an ABCC regulation.

*See* Majority opinion, p. 534. First and foremost, this reasoning is fatally flawed for one

basic reason: Officer Barnes did not arrest Mrs. Kelley. A senior officer, Officer Hall, was the officer who arrested and placed handcuffs on Mrs. Kelley. However, neither Mrs. Kelley nor Mr. Kelley filed any causes of action against the actual arresting officer.

Moreover, the record is replete with the kind of behavior Mrs. Kelley exhibited at the police station. The deposition testimony of Officer Barnes and Officer Hall indicates that Mrs. Kelley arrived at the station and began yelling and using profanity and racially derogatory comments to Officer Barnes. In fact, her behavior was loud enough for Officer Hall to hear it from a back room. It prompted Officer Hall to come out of the back room and tell her that she needed to calm down. He testified that "Frieda came in the police station. She was cussing, going on; coming in calling [Officer Barnes] n*gg**s and said, 'I'll have your f-ing job. You'll be on the back of a trash truck before this week is out.'" She was repeatedly told to leave or she would be arrested. Her own testimony reveals that she was told to leave or she would be arrested, even though she indicated her disagreement with the correctness of that action as she felt she "had as much right there as anybody else." Mrs. Kelley's husband had accompanied her to the police station and even he attempted to calm her down and get her to leave, but she refused. Thus, based on her behavior and the fact she was warned to leave or be arrested, her arrest was lawful.[2] The circuit court's grant of summary judgment was correct in relation to Mrs. Kelley.

The circuit court weighed all of the evidence and decided that there was no genuine issue of material fact regarding what time Officer Barnes found Mr. Kelley inside his bar, along with other people, in violation of

---

**2.** She was arrested pursuant to W. Va.Code §§ 61–6–1b(a) (1988) (Repl.Vol.2000) and 61–6–19 (1971) (Repl.Vol.2000). Her behavior clearly fits within the parameters of these code sections because she

> [while] in a public place ... disturb[ed] the peace of others by violent, profane, indecent or boisterous conduct or language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another per-

son, and who persists in such conduct after being requested to desist by a law-enforcement officer acting in his lawful capacity, is guilty of disorderly conduct, a misdemeanor[.]

W. Va.Code § 61–6–1b(a). Moreover, "[i]f any person willfully interrupt or molest the orderly and peaceful process of any department, division, agency or branch of state government or of its political subdivisions, he [or she] shall be guilty of a misdemeanor[.]" W.Va.Code § 61–6–19.

the ABCC regulations. A *de novo* review of the record leads me to the same conclusion. While the appellants desperately wish that the time involved was before 3:30 a.m., there is absolutely no evidence in the record to support their contentions, including their own deposition testimony. Because the citation was proper, the grant of summary judgment regarding Mr. Kelley should have been affirmed by this Court.[3] Likewise, regarding Mrs. Kelley, Officer Barnes was not the arresting officer and, even if he had been, the arrest was lawful. Therefore, the grant of summary judgment regarding Mrs. Kelley should have been affirmed by this Court.

For the reasons stated, I dissent. I am authorized to state that Justice Benjamin joins me in this dissenting opinion.

---

**3.** As recognized by the majority opinion, if Officer Barnes did not act in a negligent manner, the City of Williamson has no liability under W. Va.Code § 29–12A–4(c)(2) (1986) (Repl.Vol. 2004), and Officer Barnes would not be subject to liability pursuant to W. Va.Code § 29–12A–5(b) (1986) (Repl.Vol.2004) absent any bad faith, malicious, wanton, or reckless conduct. *See* Majority opinion, p. 535. Thus, I would affirm the circuit court's rulings that Officer Barnes did not act negligently or with bad faith, malicious, wanton, or reckless conduct. Hence, neither Officer Barnes nor the City should be exposed to liability under the Governmental Tort Claims and Insurance Reform Act. *See* W. Va.Code § 29–12A–1, *et seq.*