665 So.2d 254 (1995)
Timothy McGory, Appellant,
v.
Edith METCALF, as Personal Representative of the Estate of Karl Scott Metcalf, and on behalf of Edith Metcalf, as natural mother, and Thomas R. Metcalf, as natural father, Appellees.
No. 95-00028.
District Court of Appeal of Florida, Second District.
November 3, 1995.
Rehearing Denied December 26, 1995.
*256 William N. Drake, Jr., Assistant City Attorney, St. Petersburg, for Appellant.
Robert H. Dillinger, St. Petersburg, for Appellees.
DANAHY, Judge.
The appellant, Timothy McGory, is an officer of the St. Petersburg Police Department, and a defendant in the trial court. The appellees sued the City of St. Petersburg and Officer McGory alleging various causes of action based on the death of their son, Karl Metcalf, whom McGory shot. McGory brings this nonfinal appeal from an order denying him summary judgment under 42 U.S.C. § 1983 on the basis of qualified immunity. Tucker v. Resha, 648 So.2d 1187 (Fla. 1994). There are no material facts in dispute. We have jurisdiction because we decide only a question of law. Johnson v. Jones, ___ U.S. ___, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). McGory contends that, on the basis of the undisputed material facts, any reasonable police officer would have probable cause to believe that Karl Metcalf posed an immediate and deadly threat. Therefore, he further contends, his actions based on that probable cause entitled him to qualified immunity and a grant of the summary judgment. We agree and reverse.

THE FACTS
At 2 a.m. on May 3, 1992, the police dispatcher sent McGory to investigate a domestic complaint at a home on 12th Avenue North between Second and Third Streets. There is an alley behind the homes on the north side of this block separating them from the homes on the south side of 13th Avenue North. McGory was in uniform which included, on this occasion, his police-issued black jacket with police insignia. As McGory was interviewing the female complainant of the domestic dispute in the backyard of the home near the alley, a male dressed all in black ran up to him from the alley and told McGory that a man in a blue pickup truck had just assaulted him and a friend by pointing a gun at them.
At that moment McGory saw three white males running in a line south on Third Street and then turn left into the alley toward him. McGory asked the black-clad man who had just reported the assault whether the first of these runners was the person who had pointed the gun at him. The man in black answered in the negative saying that the first running man was the friend who was with him when the assault occurred. As the second man running in line came into the light of the street lamp in the alley, the man in black with McGory identified him as the gun-wielding assailant. McGory could see that this second man in line, later identified as Karl Metcalf, had a gun in his hand. McGory, who was standing near a utility pole and a wall, drew his weapon and pointed it along with his flashlight at Karl's chest and ordered him several times to put down his weapon. Although his usual procedure was to say "Police  freeze!" McGory did not recall the exact content of what he said to Karl except to say he was directing him to disarm. McGory could not say that he identified himself as a police officer and we assume, for purposes of this opinion, that he did not so identify himself. Karl had, by this time, advanced to about thirty feet from McGory, stopped, raised his weapon in a point-shoulder stance, and pointed it at McGory.
Michael Chmielewski, Karl's companion that night and the third in line of the three running men, told police investigators that he followed Karl into the alley and saw who Michael thought was the man in black they were chasing shine a light in Karl's face and point a gun at Karl from behind a low wall. Michael heard the man with the light and the gun say "drop your gun" to which Michael heard Karl reply "you drop your gun." McGory told investigators that he did not remember hearing Karl say anything but when Karl disregarded his order to drop the weapon and pointed it at him, McGory fired three shots at Karl then took cover. Michael's statement confirms McGory's shooting at this time. When McGory looked out, Karl was sitting with his legs outstretched in *257 front but with the gun still pointed at McGory. Michael stated that Karl shot back as he was going down. McGory stated that Karl shot back from the sitting position still in the point-shoulder stance. McGory immediately fired more shots at Karl from his cover behind the wall.
When McGory looked out again Karl was lying flat in the alley with the gun no longer in his hand but on the ground nearby. McGory quickly approached, kicked the gun away, and saw that Karl was bleeding. He holstered his gun and called for medical help and backup. As McGory approached Karl after the shooting, McGory saw the third man in line (Michael) retreat and run back down the alley. While he waited for help to arrive, McGory tried to stop Karl's bleeding by applying pressure to the wound. Karl died at the scene as a result of McGory shooting him.
All these events took place within a matter of moments. Based on McGory's statement to police investigators, the time from when he first saw Karl enter the alley to the moment McGory shot him was less than thirty seconds. Michael stated that after Karl replied to the person behind the light "you drop your gun," the first shots were fired within five seconds.

PROCEEDINGS IN THE CIRCUIT COURT
Karl's mother, Edith Metcalf, in her capacity as personal representative of Karl's estate and on behalf of herself and Karl's father, Thomas, filed a complaint against the City of St. Petersburg and against McGory individually. The count against McGory individually, Count III, charged a violation of 42 U.S.C. § 1983 for wrongful use of objectively unreasonable deadly force resulting in Karl's death, thereby violating Karl's Fourth and Fourteenth Amendment rights under the United States Constitution.[1] This appeal concerns only this count, the 42 U.S.C. § 1983 claim against McGory individually.
After answering the Metcalfs' complaint and asserting affirmative defenses, McGory moved for summary judgment as to Count III on the grounds of qualified immunity. The summary judgment motion asserted that he was acting in his capacity as a municipal police officer and had used only objectively reasonable deadly force when faced with the threat of Karl pointing a gun at him. The Metcalfs opposed the motion relying upon: (1) the lengthy statement McGory gave to police internal affairs investigators later in the day of the shooting and (2) Michael Chmielewski's statement also given that day to police internal affairs investigators. The Metcalfs contended that there were material facts in dispute precluding summary judgment based on Michael's statement that when Karl was shot both his hands were facing down and that McGory never identified himself as a police officer. The circuit judge, relying on the two statements filed by the Metcalfs, denied McGory's motion for summary judgment and he appealed this denial under the authority of Tucker v. Resha.

ABSENCE OF MATERIAL DISPUTED FACTS
The Metcalfs contend that summary judgment was properly denied because there are material facts in dispute. They maintain that McGory's version is that he was in the middle of an alley shining a light on Karl's chest, heard no words from Karl, and Karl was in a full point-shoulder stance. They summarize Michael's version as placing McGory behind a wall shining a flashlight into Karl's face, words being exchanged, and Karl's hands at his side along with the gun pointed downward when he is shot from behind a wall by a person who did not identify himself as a police officer.[2] They cite Yates *258 v. City of Cleveland, 941 F.2d 444 (6th Cir.1991) (when material facts are in dispute the reasonableness of a shooting is a jury question), and Ansley v. Heinrich, 925 F.2d 1339 (11th Cir.1991) (same). This statement of the law is a correct one. We disagree, however, with the Metcalfs and the circuit court that there are any disputed material facts.
A dispute about a material fact is genuine only if the evidence is such that a jury could return a verdict for the nonmoving party. Sledd v. Lindsay, 864 F. Supp. 819, 825 (N.D.Ill. 1994). At the time Michael stated to police investigators that he saw Karl's hands facing down, he explained that when he entered the alley behind Karl, he focused on the light shining on and silhouetting Karl in front of him. When he heard the verbal exchange about dropping each other's guns, Michael realized the man he saw with the light also had a gun. This verbal exchange also indicated to Michael that Karl was armed. Michael had not known until that moment that Karl was armed that evening but was not surprised to discover it because he knew that Karl had a license to, and did at times, carry a concealed weapon. In fact, he had been with Karl the previous day when Karl purchased a holster for his handgun. Because Karl was about twenty yards in front of and facing away from Michael, Michael told the investigators that he could not say definitely that Karl did not have a gun. He said that he was more focused on the person behind the wall with the light and the gun, the person who had told Karl to drop his gun. Michael's exact words were: "The only time I looked at Karl is when I saw he got hit and both his hands were facing down 'cause he looked like it was very slow motion, he hit a knee first... . And then like rolled to his back. But when he started to fall like that then he side shot at the wall."
Michael's statement does not contradict McGory's as to what position Karl was in just before McGory first shot because Michael was not looking at Karl at that moment. By Michael's own admission, all Michael could see was Karl's back because Karl was twenty yards in front of him and silhouetted by the flashlight McGory was shining on Karl. Cf. Harrell v. Decatur County, 41 F.3d 1494 (1995), which, on rehearing, adopted the dissenting opinion of Judge Dubina in Harrell, 22 F.3d 1570, 1577-81 (11th Cir.1994). In Harrell on rehearing the court found that an eyewitness's version of the encounter between the police officer and the decedent did not raise a genuine issue of material fact where the eyewitness had a rear-angle view from the back seat of the patrol car and from behind a protective screen. The eyewitness's testimony did not shed much light on what a reasonable officer standing in that deputy's position would have seen from just below the crest of an embankment and looking at the silhouette of the decedent through the front passenger window of the decedent's car. In the case before us Michael admitted that the first time he saw Karl's gun was when Karl shot back as he was falling down. Based on the entirety of the two statements, McGory's and Michael's, we conclude that McGory presented, and the Metcalfs failed to dispute, the material fact that Karl was threatening him with a gun which he refused to drop just before McGory fired first. As discussed below, we find that McGory's failure to identify himself as a police officer in the split second before he decided to shoot does not compel a different result nor does it raise a disputed issue of material fact.

QUALIFIED IMMUNITY
Having concluded that there were no disputed material facts we turn now to the applicable law.[3] The police officer must first show that he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred. Neither party here contends that McGory was acting other than in his official capacity as a police officer and exercising discretionary authority. The next inquiry is whether the law allegedly violated was clearly established at the time of *259 the incident. "Government officials performing discretionary functions are shielded from civil liability to the extent their conduct `does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir.1991) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Since McGory met this initial burden of showing that he was acting within his discretionary authority, the burden shifted to the Metcalfs to show lack of good faith on McGory's part by demonstrating that his actions violated clearly established law. Rich v. Dollar, 841 F.2d 1558 (11th Cir.1988).
If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful... . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.
Harlow v. Fitzgerald, 457 U.S. at 818-19, 102 S.Ct. at 2738.
At the time this incident occurred, the United States Supreme Court had held, and thus McGory was presumed to know, that the Fourth Amendment limited an officer's use of deadly force to those situations where he has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). However, McGory was not required to know that he had to make Karl understand that he was threatening a police officer before shooting because "there existed no clear standard of law that an officer must obtain confirmation that the threatening suspect knows that he is confronting a peace officer prior to using deadly force." Sledd v. Lindsay, 864 F. Supp. at 830. The only inquiry, then, is, regardless of the failure to identify himself as a police officer, whether there was probable cause for an officer in McGory's position to believe that Karl posed a threat of serious physical harm to McGory or others. Thus can we balance the intrusion on Fourth Amendment rights against the government's countervailing interests. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The balancing test will include as a major factor whether the suspect poses an immediate threat to the safety of the officer or others. See id.
Moreover, in this Fourth Amendment context, where McGory "seized" Karl in the most drastic way possible, the inquiry into the reasonableness of using deadly force is an objective one. The reasonableness of using deadly force must be based on the facts and circumstances confronting the officer without regard to the officer's underlying intent or motivation. Graham, 490 U.S. at 397, 109 S.Ct. at 1872. The use of force must be judged from the perspective of a reasonable officer on the scene and not with the benefit of 20/20 hindsight. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments  in circumstances that are tense, uncertain, and rapidly evolving  about the amount of force that is necessary in a particular situation." Id. at 396-97, 109 S.Ct. at 1872.
We believe that under the undisputed material facts of this case, McGory had probable cause to believe that Karl posed a threat of serious physical harm to McGory or others. McGory had just been informed by a man running up to him that a man in a truck had threatened him and his friend with a gun. At that moment the informant's friend came running into the alley followed by the man whom the informant immediately identified as their assailant. The assailant was armed with a gun and came toward the officer brandishing that gun and pointing it at the officer, disregarding the officer's order to drop the gun. It may well be, in looking at the situation from Karl's viewpoint, that it seemed Karl had been led into a trap by the men he had been chasing, especially since one of the men was dressed in dark clothing as was McGory. However unfortunate this shooting may have been, we must look at the circumstances from a reasonable officer's viewpoint and not Karl's. Slattery v. Rizzo; see O'Neal v. DeKalb County, 850 F.2d 653 *260 (11th Cir.1988) (where suspect armed with knife lunged at officer with knife, use of deadly force in self-defense did not violate Fourth Amendment); Fraire v. City of Arlington, 957 F.2d 1268 (5th Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992) (where suspect was about to run over officer with his car, use of deadly force in self-defense was constitutional).

CONCLUSION
The purpose of the defense of qualified immunity is to remove most civil liability actions from the legal process long before submitting disputed facts to a jury. Only in those cases where the officer clearly acted in violation of the law should civil liability be imposed. A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). We ask ourselves, under the circumstances of this case, what more is a police officer to do? We conclude that any reasonable police officer faced with the circumstances confronting McGory would have reacted in the same manner believing him- or herself entitled to use deadly force in this situation requiring self-defense. Not identifying himself as an officer of the law in the split second McGory had to react to the life-and-death situation before him does not change this conclusion. Cf. Tennessee v. Garner, 471 U.S. at 11-12, 105 S.Ct. at 1701 ("[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." [Emphasis added.]). Thus, as a matter of law, McGory's conduct when faced with Karl's threat was objectively reasonable and his motion for summary judgment on the grounds of qualified immunity should have been granted.
Accordingly, we reverse the denial of McGory's motion for summary judgment and remand with directions to order summary judgment on Count III in his favor.
THREADGILL, C.J., and QUINCE, J., concur.
NOTES
[1] The complaint otherwise alleged the following: in Count I, negligence against the City in its procedures and training of McGory which resulted in Karl's wrongful death; in Count II, negligent retention against the City for keeping McGory on the police force after notice of his violent propensities; in Count IV against the City, a 42 U.S.C. § 1983 violation and municipal liability for failure to take remedial action against officers who wrongfully shoot civilians; and, finally, in Count V a 42 U.S.C. § 1983 violation against the City for failure to train its police officers in the proper use of deadly force.
[2] The Metcalfs' counsel paraphrases Michael's statement to say that Karl's hands were down at his sides when he was shot. As noted in our discussion, infra, Michael's statement did not go so far as that.
[3] The history and scope of the law of qualified immunity for an alleged violation of 42 U.S.C. § 1983 has recently been outlined by Arthur C. Wallberg in More Than a Defense: Absolute and Qualified Immunities of State Officials Under 42 U.S.C. § 1983, Fla.Bar.J., June 1995, at 108.