696 So.2d 370 (1997)
George BRESCHER, as former Sheriff of Broward County, Florida, and Paul Dean and Kevin McNesby, as individuals, Appellants,
v.
Miguel PIREZ, Appellee.
No. 95-0175.
District Court of Appeal of Florida, Fourth District.
January 15, 1997.
Order Denying Rehearing April 30, 1997.
Rehearing and Rehearing Denied July 1, 1997.
*371 Robert M. Klein and Louise H. McMurray of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellants.
David J. Finger of Levine & Finger, and Arthur J. England and Elliot H. Scherker of *372 Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, for appellee.
Rehearing and Rehearing En Banc Denied July 1, 1997.
WARNER, Judge.
This claim for civil damages under the Civil Rights Act, 42 U.S.C. section 1983, arises from a shooting incident in 1984 in which plainclothes sheriff's deputies used deadly force in attempting to arrest a van full of people fleeing from the scene of a burglary. The deputies and the former sheriff of Broward County claim that the deputies were entitled to qualified immunity for their acts. We hold that the deputies were entitled to qualified immunity, and that the trial court erred in denying the deputies' motions for summary judgment, directed verdict, and judgment notwithstanding the verdict on this issue. We also hold that the claim against former sheriff Brescher is barred by res judicata.
At approximately 12:40 a.m. on June 22, 1984, the police received a 911 call from a resident of an apartment complex in Broward County. She reported that from her apartment she was observing a group of men moving from car to car in the parking lot below her. Some members of the group were trying to remove the radio from a convertible. Another member of the group was backing out in a black van with an orange and yellow stripe, as if getting ready to leave. The appellant deputies, members of the Selective Enforcement Team consisting of plainclothes officers whose job it was to handle felony-in-progress calls, heard the dispatcher's report of the 911 call and went to the scene. From a clearing in the shrubbery across the parking lot, the deputies observed the van, the convertible, someone leaning over the convertible, and a group of about four or five males. Appellee Pirez, the driver of the van, admitted to being one of the group, although he denied taking part in the burglary of the car. Suddenly, the group around the car began to run and jump into the van which Pirez was driving. The deputies began to run toward the van with their guns out.
At this point, many facts are in dispute. The deputies testified that they believed they had been spotted by the group in the van, while members of the van group testified that they began to run and jump into the van when they heard someone scream "they have got guns." The deputies testified that they were all shouting things like "halt, police, freeze, sheriff's department, don't move," and that two of the officers had their badges out. Appellee Pirez testified that he could see the men running with guns towards the van yelling, but that he could not understand what they were saying. Although one of the van members testified that he saw a badge on one of the officers as he approached the van, the appellee and another van occupant testified that they did not know that the men were police officers.
Two of the deputies, McNesby and Ciacciarrelli, ran to the passenger side of the van, and deputy Dean approached the van from the front. Dean testified that as he ran towards the van, he observed the driver try to start the van. While Dean claimed the van lurched forward and hit him, none of the occupants of the van saw the van strike Dean. Somehow Dean appeared at the driver's window, and it is undisputed that he stuck his gun in the window at Pirez, the driver. It is also undisputed that at that point Pirez put the van into gear and accelerated. Dean testified that he had both hands inside the vehicle and was dragged when the van accelerated. Dean then fired into the vehicle, striking Pirez. He fired in order to extricate himself and prevent Pirez from accelerating further. The van occupants, on the other hand, testified that Dean had only one hand in the vehicle and was holding onto the door and running along side the van when he shot at Pirez.
In the meantime, McNesby testified that when he heard Dean scream as the van accelerated, he too shot at Pirez to avoid further injury to Dean. The shots fired by Dean and McNesby injured Pirez and killed Torres, another occupant of the van.
Pirez filed suit against the former sheriff and Deputies Dean and McNesby claiming that the deputies had violated his civil rights *373 by using excessive force against him.[1] After a jury verdict in favor of Pirez, appellants have lodged this appeal.
The deputies claim that they were entitled to qualified immunity from suit. The trial court denied the deputies' motions for summary judgment, directed verdict, and judgment notwithstanding the verdict on this issue.
In Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court rejected the defense of absolute immunity for most governmental officials performing executive branch functions but agreed that such officials could claim qualified immunity for actions in the performance of their duties. Allowing actions for damages for substantial claims of abuse of power would act as a check upon public officers in the performance of their duties. It was necessary, however, to prevent the continuation of "insubstantial lawsuits":
[I]t cannot be disputed seriously that claims frequently run against the innocent as well as the guiltyat a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will "dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties."
457 U.S. at 814, 102 S.Ct. at 2736 (footnote and citation omitted). The Court held that government officials performing discretionary functions are protected by qualified immunity from liability for civil damages in section 1983 actions unless a reasonable person would have known that the questionable conduct violated clearly established law. Id. at 818, 102 S.Ct. at 2738. This rule, the Court believed, would strike the proper balance:
Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."
Id. at 819, 102 S.Ct. at 2739 (footnote and citation omitted).
Both parties recognize that the rule of Harlow applies to this case. See also Goetz v. Noble, 652 So.2d 1203 (Fla. 4th DCA 1995). We also have previously noted that qualified immunity "shields `all but the plainly incompetent or those who knowingly violate the law.'" DeWald v. Wyner, 674 So.2d 836, 839 (Fla. 4th DCA 1996) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). The issue then becomes whether the officers violated clearly established law which applied on the date of the incident.
In asserting qualified immunity, it is first the officer's burden to establish that he was acting within the scope of discretionary authority; the burden then shifts to the plaintiff to show that the officer's action violated the plaintiff's rights in light of clearly established law. McGory v. Metcalf, 665 So.2d 254, 258-59 (Fla. 2d DCA 1995), rev. denied, 672 So.2d 543 (Fla.1996). Both parties agree that Dean and McNesby were acting within the scope of their employment. Therefore, Pirez had the burden of proving that the officer's actions violated his rights in light of clearly established law.
In 1985, the United States Supreme Court held in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that the use of deadly force to apprehend a fleeing felon is excessive and a violation of a person's constitutional right if the suspect poses no imminent threat to the police or to the public. However, because this incident occurred prior to the rendition of Garner, we must analyze the issue of whether the officers violated clearly established law on preGarner precedent. See Hamm v. Powell, 874 F.2d 766 *374 (11th Cir.1989), modified on other grounds on reh'g in part, 893 F.2d 293 (11th Cir.), cert. denied, 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 665 (1990).
Section 776.05, Florida Statutes (1983), provided:
[A law enforcement officer] is justified in the use of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest or when necessarily committed in retaking felons who have escaped or when necessarily committed in arresting felons fleeing from justice.
In City of St. Petersburg v. Reed, 330 So.2d 256 (Fla. 2d DCA), cert. denied, 341 So.2d 292 (Fla.1976), the court stated:
Under the decisional law of this state, when an officer has reasonable grounds to believe one has committed a felony, the officer is entitled to use force which is reasonably necessary to capture him, even to the extent of killing or wounding him.... This right does not depend on the type of felony which has been committed.
Id. 330 So.2d at 257-58; see also City of Miami v. Nelson, 186 So.2d 535 (Fla. 3d DCA), cert. denied, 194 So.2d 621 (Fla.1966). In Gordon v. Alexander, 198 So.2d 325 (Fla. 1967), our supreme court held that a police officer was entitled to a directed verdict in his favor concerning his use of force against a fleeing felon. The officer in Gordon had received a report of breaking and entering and went to the building involved. The officer proceeded to the rear of the building where he found the plaintiff with his head in the door where glass was broken. The officer called upon the plaintiff to halt, but the plaintiff started to run. After making two additional demands to stop which were ignored, the officer fired his gun at the plaintiff, injuring him. The court held that under the facts of the case the officer was justified in his action and did not use unnecessary or excessive force. Id. at 326-27.
While the appellee concedes that the pre-Garner cases permit the use of deadly force necessary to capture a fleeing felon, the appellee contends that there were substantial disputed issues of fact which left the resolution of this case for the jury on the claim that the force the deputies used was not reasonable or necessary. The defense of qualified immunity, however, is a question of law to be decided by the court. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Ansley v. Heinrich, 925 F.2d 1339 (11th Cir.1991). It turns on the `"objective legal reasonableness' of the action... in light of the legal rules that were `clearly established' at the time it was taken." Anderson, 483 U.S. at 639, 107 S.Ct. at 3038. Where the facts on which the determination of qualified immunity hinges are in dispute, then those facts may require a jury determination. See Pray v. City of Sandusky, 49 F.3d 1154, 1161 (6th Cir.1995). But if there are undisputed facts which require the application of the qualified immunity defense, the fact that there are other disputed issues is of no moment, and the court should grant summary judgment, directed verdict, or judgment notwithstanding the verdict.
In the instant case, the trial court refused to grant summary judgment because the court assumed that it could not find that the deputies possessed probable cause to arrest Pirez as a matter of law, because no witness was able to identify him as the driver of the vehicle and, further, that there were issues as to whether Dean hit the van or the van hit Dean and whether Pirez was knowingly fleeing the scene of a felony.[2] We find that none of these disputes in the facts preclude the assertion of qualified immunity when faced with the undisputed facts. That Pirez claims he was not involved in the burglary (although he later pled no contest to the charge) does not change the objective existence of probable cause for the officers to arrest the entire group found in the parking lot that evening. Probable cause to make an *375 arrest is based upon facts known and observations made by the apprehending officers. Hunter v. Bryant, 502 U.S. 224, 227-28, 112 S.Ct. 534, 537-38, 116 L.Ed.2d 589 (1991); Anderson, 483 U.S. at 641, 107 S.Ct. at 3039-40. It does not turn on the subjective intentions of the accused. Here, the officers had a dispatch report from an eyewitness describing the burglary of a vehicle and the impending escape of the perpetrators in a van. Upon arriving on the scene, they were able to confirm the details of the report. They observed some of the group around the convertible and then saw members of the group running towards and jumping into the van which was positioned as if ready to pull away. Whether or not Pirez was identified as a participant at the burglarized car, he was driving what appeared to be the getaway car. Thus, the officers had probable cause to arrest. Moreover, the question of whether there is probable cause to arrest is an issue of law for the court, not the jury. Metropolitan Dade County v. Norton, 543 So.2d 1301, 1302 (Fla. 3d DCA), rev. denied, 551 So.2d 462 (Fla.1989); Hamm, 874 F.2d at 770.[3]
Whether Dean hit the van or the van hit Dean, and whether Dean was partly in the window of the van and being dragged or was running beside the van, are also not essential to the determination of qualified immunity. The undisputed fact was that Pirez was attempting to leave the scene, and the gun was fired as he accelerated. Under the law as it existed at the time of the incident, a law enforcement officer could use deadly force necessary to prevent an escape. § 775.06; Gordon; Reed; Nelson. Thus, under the test of objective legal reasonableness, it cannot be said that the officers violated clearly established law by using deadly force to stop a fleeing felon.[4] Summary judgment should have been granted in favor of the deputies.
The trial court also erred in allowing the suit to proceed at trial against George Brescher in his official capacity as former Sheriff of Broward County. Much earlier in the case summary final judgment had been entered in his favor in his official capacity, which judgment was affirmed in this court and approved in the supreme court. Pirez v. Brescher, 566 So.2d 577 (Fla. 4th DCA 1990), approved, 584 So.2d 993 (Fla.1991). That summary final judgment was res judicata as to any claim against Brescher in his official capacity. Signo v. Florida Farm Bureau Casualty Ins. Co., 454 So.2d 3 (Fla. 4th DCA 1984). Therefore, the final judgment is also reversed for entry of a judgment in favor of Brescher.
Reversed and remanded.
GROSS, J., and HAUSER, JAMES C., Associate Judge, concur.

ON MOTION FOR REHEARING
WARNER, Judge.
The motion for rehearing is denied.
As additional authority for our determination that the deputies were entitled to qualified immunity, see Klein v. Ryan, 847 F.2d 368 (7th Cir.1988); Brown v. City of Clewiston, 644 F.Supp. 1417 (S.D.Fla.1986).
As to appellee's contention that its suit against Sheriff Brescher was not barred by res judicata, see also State ex rel. Harlem Irrigation Dist. v. Montana Seventeenth Judicial Dist. Ct., 894 P.2d 943 (Mont.1995) (in plaintiffs' first state court action, claims arising from the termination of their water supply were resolved adversely to them by summary judgment in favor of the Irrigation District based on sovereign immunity; in second state court action arising from same subject matter but raising § 1983 claims, court holds that res judicata barred the *376 § 1983 claims when the constitutional claims could have been raised in the earlier proceeding but were not); Howe v. Brouse, 422 F.2d 347 (8th Cir.1970) (in prior state court action, plaintiff's suit alleging damages against judge for judge's behavior during plaintiff's criminal court appearance was dismissed on grounds of judicial immunity and applicable statute of limitations; affirming dismissal on summary judgment of subsequent federal court action alleging that judge's behavior violated plaintiff's civil rights under § 1983 on the grounds of res judicata).
GROSS, J., and HAUSER, JAMES C., Associate Judge, concur.
NOTES
[1] The estate of Torres also filed suit based on similar causes of action arising from the same incident. The estate has since settled; therefore, its claims are not before us.
[2] The appellee asserts that both on summary judgment and at trial the court and the jury were entitled to rely on the testimony of a former police chief who rendered an "expert" opinion that the officers did not have probable cause to believe that a felony was being committed. As we note, the existence of probable cause is an issue of law for the court, not for expert witnesses, to decide. See Peterson v. City of Plymouth, 60 F.3d 469 (8th Cir.1995).
[3] Of course, whether a certain set of facts and circumstances exist is a question of fact for the jury. Norton, 543 So.2d at 1302; Peterson, 60 F.3d at 475.
[4] The appellee claims that the force was unnecessary, which constitutes a jury question. However, the cases cited for the proposition do not involve fleeing felons. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441 (11th Cir. 1985); Harper v. Harris County, 21 F.3d 597 (5th Cir. 1994). Carter v. City of Chattanooga, 850 F.2d 1119, 1135 (6th Cir.1988)(en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989), which did involve a fleeing felon, does not stand for the proposition for which it was cited by appellee.