## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**STEPHEN G. ENDICOTT,**
**as Administrator of the**
**Estate of P.E., Deceased,**
**Plaintiff Below, Petitioner**

**vs.)  No. 17-0765**  (Fayette County 16-C-18)

**CITY OF OAK HILL, a West Virginia Municipality,**
**CITY OF OAK HILL POLICE DEPARTMENT, and**
**PATROLMAN JOSHUA JONES,**
**Individually and in his capacity as an employee of**
**The City of Oak Hill Police Department,**
**Defendants Below, Respondents**

**FILED**
**November 2, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Stephen G. Endicott, as the Administrator of the Estate of P.E., appeals the order of the Circuit Court of Fayette County entered on July 10, 2017, granting summary judgment to the respondents. Anthony J. Sparacino, Jr., represents the petitioner. The respondents are the City of Oak Hill, the City of Oak Hill Police Department, and police officer Joshua Jones, all of whom are represented by Johnnie E. Brown and Daniel J. Burns.

This Court has considered the parties' briefs, the record on appeal, and the oral arguments by the parties, and finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

P.E.[1] died in a single-vehicle wreck on January 31, 2015. He was fourteen years old. The record indicates that in the hours before the wreck, P.E. was socializing with several of his teenaged friends. The boys gathered at the home of one friend's grandmother, a place they all referred to as "Granny's house." At some point, another friend, J.B., left to go to his own grandmother's apartment. As his grandmother slept, J.B. sneaked into her apartment through an unlocked window, took her car keys, and then took her car. J.B. was fifteen years old and had only a learner's permit to drive.

Several boys, including P.E., got into the car driven by J.B. According to J.B.'s deposition, the boys drove to a junkyard to "drift, spin tires, and do donuts." After leaving the junkyard, at

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

about 2:03 a.m. on January 31st, J.B. was stopped by Oak Hill police officer Joshua Jones for having a defective headlight. The record indicates the officer stopped J.B. about 100 yards from his destination, Granny's house.

Officer Jones spoke to P.E. and the other boys in the car and learned their ages. Thereafter, he issued a citation to J.B. for having a burned-out headlight and for driving in violation of his learner's permit. He then followed J.B.'s vehicle to Granny's house and observed J.B., P.E., and the other occupants exit the vehicle and enter Granny's house. Officer Jones told the boys to stay at Granny's house and not to go back out that night. The officer finished his traffic stop by 2:28 a.m.

Shortly thereafter, J.B. became nervous that his grandmother would be upset if she discovered her car was missing. J.B. decided to leave Granny's house and return the car to his grandmother's apartment. P.E. chose to ride with J.B. in his car. Another friend, N.P., agreed to drive his car in front of J.B.'s car to conceal the defective headlight.

At about 2:50 a.m., the two cars drove by a shopping center. Officer Jones was in his police cruiser, stationary in the shopping center lot. Upon seeing the two vehicles, one with a defective headlight, Officer Jones turned on his blue lights and attempted to stop the vehicle with the defective headlight. N.P. pulled his car to the side of the road, and J.B. passed him and accelerated away. N.P. testified in his deposition that when Officer Jones's cruiser reached him, he could no longer see J.B.'s taillights.

Officer Jones saw that N.P.'s car had both headlights operational, so he continued up the road to search for the suspect vehicle. Officer Jones asserted in an affidavit that he was looking for a vehicle with a broken headlight; he alleges he did not know he was looking for J.B. Surveillance video at a "Custard Stand" shop approximately 600 to 700 yards from the shopping center showed J.B. driving by at 2:52:27 a.m.; Officer Jones's cruiser passed the same site 21 seconds later, at 2:52:48 a.m.

About 300 to 400 yards beyond the Custard Stand is a slight left hand curve in the road. It was cold at the time of the accident, there may have been icy spots on the roadway, and there were remnants of accumulated snow along the sides of the roadway. J.B. lost control of his vehicle, struck a guardrail, and went over an embankment. Part of the guardrail came through the car and sheared through P.E.'s leg, causing his death.

Officer Jones did not see J.B.'s wreck. He drove by the site of the wreck and, having lost sight of the vehicle he was seeking, turned around several minutes later and drove back toward the place he first saw the suspect vehicle. Officer Jones found J.B. standing on the side of the road at the scene of the wreck. J.B. had already called 911 and said, "I was running from the cops," "I wrecked my car," and "I think I killed my friend."

On February 1, 2016, the petitioner filed a complaint in this civil action against the respondents, and he amended his complaint twice thereafter.[2] The petitioner alleged that Officer

---

[2] In their answer, the respondents filed a third-party complaint against J.B. alleging that J.B. had been negligent and that his negligence caused P.E.'s death. However, that third-party

Jones initiated a vehicle pursuit in reckless disregard of the safety of others, and alleged that, as a proximate cause of Officer Jones's actions, J.B. had wrecked and killed P.E. The circuit court entered a scheduling order requiring the parties to complete discovery by May 5, 2017.

On May 30, 2017, the respondents filed a motion for summary judgment, and the petitioner filed a response to the motion. The circuit court conducted a hearing on June 22, 2017. On July 10, 2017, the circuit court entered its order granting summary judgment to the respondents. The circuit court found that petitioner's case was governed by Syllabus Point 5 of *Peak v. Ratliff*, 185 W.Va. 548, 408 S.E.2d 300 (1991), where this Court said a police officer is only liable for injuries caused to a third party in a collision during a vehicular pursuit when the "officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision." The circuit court determined that J.B. wrecked a short distance from the shopping center where he first saw Officer Jones turn on his blue lights (approximately three-fourths of a mile), and that the road was a relatively straight, paved, two-lane road. There was little or no traffic on the road, and no precipitation. Further, Officer Jones was approximately 21 seconds behind J.B., and neither the officer nor N.P. could see J.B.'s taillights – likely because J.B. had already wrecked.

The circuit court concluded that, viewing the evidence in a light most favorable to the petitioner, there was no evidence to conclude that Officer Jones had acted with gross negligence or reckless conduct, and also no evidence that Officer Jones's actions were a substantial factor in causing J.B. to wreck or causing the death of P.E. The circuit court found that, "[w]hile tragic," the cause of P.E.'s death "was the actions, and/or inactions" of J.B. "while attempting to avoid being stopped by Officer Jones for the defective headlight."

The petitioner now appeals the circuit court's July 10, 2017, summary judgment order.

We review a circuit court's entry of summary judgment *de novo*. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In reviewing the circuit court's order, we apply the same guidelines as the circuit court. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). Accord Syl. pt. 5, *Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971) ("A motion for summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law."). Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

The petitioner raises five points of error.

---

complaint was dismissed after respondents learned that J.B., along with J.B.'s father and his home insurer, had in a separate suit previously settled all claims with P.E.'s estate.

First, petitioner's central argument is that the circuit court erred in granting summary judgment. Petitioner's argument focuses on West Virginia Code § 17C-2-5 [1971], which creates a form of immunity for police departments, permitting a police officer to drive an emergency vehicle with a flashing light and siren "when in the pursuit of an actual or suspected violator of the law" and, while engaged in a pursuit, disregard various traffic safety regulations. The statute requires the police officer to "drive with due regard for the safety of all persons," and says there is no immunity protecting the police officer "from the consequences of his reckless disregard for the safety of others." W.Va. Code § 17C-2-5(d).

Petitioner argues that genuine questions of material fact exist regarding whether Officer Jones drove with reckless disregard, or drove without due regard, for the safety of P.E. Petitioner points to our holding in *Peak* where we interpreted West Virginia Code § 17C-2-5 and held:

> Where the police are engaged in a vehicular pursuit of a known or suspected law violator, and the pursued vehicle collides with the vehicle of a third party, under W.Va. Code, 17C–2–5 (1971), the pursuing officer is not liable for injuries to the third party arising out of the collision unless the officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision.

Syl. pt. 5, *Peak v. Ratliff*, 185 W.Va. at 550, 408 S.E.2d at 302. It is petitioner's position that facts are in dispute as to whether Officer Jones's pursuit of J.B. amounted to reckless conduct or gross negligence.

The record, however, supports the circuit court's conclusion that there was no evidence to support or infer a finding of reckless conduct or gross negligence in the pursuit by Officer Jones. The circuit court properly applied our holding in *Peak*, where we stated:

> What type of conduct is reckless or amounts to gross negligence in a pursuit context cannot be determined by a simple formula. Courts have indicated a number of factors that can be considered, such as the length, characteristics, and speed of the pursuit; the area of the pursuit, whether rural or urban; the highway characteristics such as curves or no passing zones; the presence of pedestrians and traffic; weather and visibility; and the seriousness of the law violation.

*Peak*, 185 W.Va. at 556, 408 S.E.2d at 308. The record establishes that Officer Jones's pursuit of J.B. was exceptionally short, perhaps three-fourths of a mile, and seems to have lasted less than one minute. The road was largely straight with a gentle left curve, where J.B. wrecked at the beginning of the curve. The pursuit occurred at 2:50 a.m., with little or no traffic on the road, and the weather was clear. And, most significantly, Officer Jones was far behind J.B. Surveillance video from the Custard Stand indicated that Officer Jones was at least 21 seconds behind J.B., and statements by counsel suggest that J.B.'s wreck may be visible in the video. Additionally, J.B.'s friend N.P. testified what when he pulled over for Officer Jones, J.B.'s taillights were no longer visible when Officer Jones passed, evidence that further indicates that J.B. had already wrecked when the officer began any pursuit.

4

On this record, we cannot discern any triable issue of fact regarding whether Officer Jones engaged in conduct under *Peak* and West Virginia Code § 17C-2-5 that would support a finding of liability. The record establishes that there was no genuine issue of fact to be tried regarding whether Officer Jones was reckless or grossly negligent, and inquiry concerning the facts was not desirable to clarify the application of the law. Therefore, the circuit court correctly granted summary judgment to the respondents.

Petitioner next asserts that the circuit court erred in concluding that J.B.'s actions caused P.E.'s death. Specifically, petitioner contends the court should not have found that J.B.'s actions alone were an intervening, efficient cause sufficient to cut off the respondents' liability for P.E.'s death. Petitioner argues that Officer Jones's failure to take steps to ensure P.E.'s safety following the first traffic stop triggered a causal sequence that led J.B. to flee Officer Jones's pursuit after he attempted the second traffic stop. Whether J.B.'s action was a substantial intervening cause sufficient to break the chain of causation was, by the petitioner's reasoning, a question of fact for jury resolution.

Generally, "questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusion from them." Syl. pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963). Accord, Syl. pt. 5, *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964) ("Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them."). However, under *Peak v. Ratliff*, to reach a jury a plaintiff must offer evidence that a police officer's reckless conduct or gross negligence "was a *substantial factor* in bringing about the collision." Syl. pt. 5, *Peak v. Ratliff*, 185 W.Va. at 550, 408 S.E.2d at 302 (emphasis added). *See also* Syl. pt. 13, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990) ("A tortfeasor whose negligence is *a substantial factor* in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct." (Emphasis added)).

As we noted earlier in this opinion, the circuit court correctly applied *Peak* and West Virginia Code § 17C-2-5 and ruled that petitioner failed to produce evidence that the respondents breached their duty of care, and were somehow grossly negligent or reckless toward P.E. Nevertheless, even assuming a rational trier of fact could find Officer Jones's actions grossly negligent or reckless, our law requires the petitioner to offer evidence the officer's actions were *a substantial cause* of P.E.'s death. We cannot discern from the record a triable question regarding whether Officer Jones's conduct was a substantial cause in bringing about J.B.'s wreck. As J.B. admitted in his deposition, he ran from the police officer out of fear and that he himself was careless and caused the wreck. We do not perceive how a jury could find Officer Jones was a substantial factor in causing the wreck when the evidence shows Officer Jones was so far behind J.B. that, on a largely straight section of road, the officer did not see J.B.'s wreck and drove by the wreck without noticing it. The circuit court found that "the cause of [P.E.'s] death was the actions, and/or inactions, of [J.B.] while attempting to avoid being stopped by Officer Jones for the defective headlight." We find no error by the circuit court on this point.

5

Petitioner's third argument is that the circuit court abused its discretion when it refused to grant the petitioner a continuance and additional time to conduct discovery, and instead granted summary judgment. Petitioner argues he did not have sufficient time to depose several witnesses, primarily Officer Jones, prior to the discovery deadline in May 2017. Petitioner points out that the respondents joined petitioner in asking the circuit court for a continuance because some witnesses had not been deposed. However, the respondents point out that the petitioner filed his case in February 2016, 15 months before the discovery deadline. The circuit court's September 2016 scheduling order afforded the parties seven months in which to complete discovery.

Over a century ago, this Court established that the decision to deny or grant a continuance is within the discretion of the trial court. "It is well settled as a general rule that the question of continuance is in the sound discretion of the trial court, which will not be reviewed by the appellate court, except in case it clearly appears that such discretion has been abused." Syl. pt. 1, *Levy v. Scottish Union & Nat'l Ins. Co.,* 58 W.Va. 546, 52 S.E. 449 (1905). "Whether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." Syl. pt. 3, *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539 (1979). Accord, Syl. pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995) ("Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.").

Petitioner's argument on appeal focuses largely on his inability to take Officer Jones's deposition. Petitioner admits that the failure to depose Officer Jones before the discovery deadline was the result of scheduling conflicts and not any intentional refusal to make the witness available. However, petitioner's counsel never sought the circuit court's assistance in requiring Officer Jones's appearance. In fact, the first time counsel raised the issue was at the circuit court hearing on June 22, 2017, almost seven weeks after the discovery deadline. On this record, we cannot say that the circuit court abused its discretion when it refused to grant a continuance and give petitioner additional time to conduct discovery.

We examine the last two arguments made by the petitioner together. Petitioner's fourth argument is that the circuit court should have imposed sanctions on the respondents for discovery violations. During a deposition taken after the discovery deadline, the parties' counsel learned that an unknown woman was present at the scene of J.B.'s wreck, a woman who – after some investigation – counsel for the respondents revealed was Officer Jones's mother. Petitioner argues generally that the circuit court should have imposed discovery sanctions on the respondents for not revealing this fact earlier.

Counsel for the petitioner drafted a detailed motion for discovery sanctions against the respondents. Counsel served the motion on the respondents on July 4, 2017, the day before a hearing was held by the circuit court. However, at that July 5th hearing, counsel for petitioner essentially abandoned his motion for sanctions after learning that the circuit court intended to enter a summary judgment order in favor of the respondents. Counsel asked to "submit my motion for sanctions and make that part of this record," but told the circuit court "[i]t's moot now because you've ruled." The circuit court acknowledged the motion for discovery sanctions, and said, "Well, like I [said], discovery cutoff has long since passed." The circuit court never ruled on petitioner's motion for sanctions.

6

In his fifth argument, petitioner asserts that the "special relationship" exception to the "public duty" doctrine applied to the facts. Under the public duty doctrine, "[a] political subdivision is immune from liability if a loss or claim results from: . . . the failure to provide, or the method of providing, police, law enforcement or fire protection[.]" West Virginia Code § 29-12A-5(a)(5) [1986]. Petitioner claims, however, that the respondents owed a special duty to P.E., because of the manner in which Officer Jones initially cited J.B. for driving with only a learner's permit, and then left him, P.E., and the other teenagers at Granny's house without notifying any adults. *See generally*, Syl. pt. 3, *Benson v. Kutsch,* 181 W.Va. 1, 380 S.E.2d 36 (1989) (establishing special relationship exception to public duty doctrine); *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989) (outlining four factors to weigh whether a special duty of care exists). Petitioner made his argument regarding the special relationship exception to the public duty doctrine to the circuit court, but the circuit court never discussed the argument in its summary judgment order.

It has been firmly established that this Court will not consider questions that were not ruled upon by the circuit court. We said plainly in Syllabus Point 4 of *Highland v. Davis*, 119 W.Va. 501, 195 S.E. 604 (1937): "This court will not consider questions not acted upon by the trial court." Accord, Syl. pt. 1, *In re Nicholas' Estate*, 142 W.Va. 80, 94 S.E.2d 452 (1956) (this Court "will not entertain and decide a nonjurisdictional question not passed on by the circuit court."); Syl. pt. 10, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. at 161, 133 S.E.2d at 772 ("The Supreme Court of Appeals . . . in cases within its appellate jurisdiction . . . will not consider or decide nonjurisdictional questions which have not been determined by the trial court."). In the instant case, the circuit court entered no ruling on the petitioner's motion for discovery sanctions against the respondents. Likewise, the circuit court did not discuss petitioner's arguments regarding public duty immunity or the special relationship exception in its summary judgment order, and ruled against petitioner on a wholly different ground. Because these questions were not acted upon by the trial court, we decline to address petitioner's final two arguments.

For the foregoing reasons, we affirm the circuit court's July 10, 2017, summary judgment order.

Affirmed.

**ISSUED:** November 2, 2018

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins

**DISSENTING:**

Chief Justice Margaret L. Workman
Justice Paul T. Farrell sitting by temporary assignment

Justice Allen H. Loughry II suspended and therefore not participating.

7

Workman, Chief Justice, dissenting, joined by Justice Farrell:

I respectfully dissent to the holding of the majority. The circuit court erred by granting summary judgment in favor of the City of Oak Hill, the City of Oak Hill Police Department, and Patrolman Joshua Jones, in the absence of adequately developed discovery. Resolution of this case depends almost entirely upon application of very factually driven components of statutory immunity.

First, with regard to the immunity of Patrolman Jones, as an employee, West Virginia Code § 29-12A-5(b)(2), provides "[a]n employee of a political subdivision is immune from liability unless . . . (2) [h]is or her acts or omissions were with *malicious purpose, in bad faith, or in a wanton or reckless manner*." (Emphasis supplied). Second, on the issue of the immunity of Oak Hill, as a political subdivision, West Virginia Code § 29-12A-4(c)(1) and (2) provide that "political subdivisions are liable for injury, death, or loss to persons or property caused by the *negligent* operation of any vehicle by their employees when the employees are engaged within the scope of their employment and authority" and are also liable for "the *negligent* performance of acts by their employees while acting within the scope of employment." (Emphasis supplied). Third, the emergency vehicle statute, West Virginia Code § 17C-2-5, provides that although police officers driving emergency vehicles in pursuit of suspected violators of the law are entitled to certain driving privileges, they are not relieved "from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his *reckless disregard* for the safety of others." (Emphasis supplied).

Thus, each statutory standard guiding a court's resolution of the immunity matters very conspicuously requires some element of factual determination regarding negligence, malicious purpose, bad faith, wanton or reckless manner, or reckless disregard for the safety of others. Petitioner's cause of action against the respondents in this case asserts varying degrees of negligence and recklessness and constitutes the type of claim this Court has consistently found inappropriate for summary judgment resolution. As we have repeatedly observed, "[t]he questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them." Syl. Pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963); *see also* Syllabus, *Weese v. Muir*, 425 S.E.2d 218, 188 W.Va. 542 (1992).[1]

The factual foundation necessary to the ultimate immunity inquiry must be sufficiently elucidated prior to a resolution through summary judgment. In this case, that factual foundation was woefully inadequate. The parties obviously recognized this deficiency and *jointly* filed a motion to continue on May 22, 2017. This joint motion to continue, prepared by counsel for respondents, explained the discovery predicament and stated "the parties are in agreement that additional discovery, including depositions, remains to be completed." The parties also clearly

---

[1]This Court has consistently insisted that "[a] party who moves for summary judgment has the burden of showing that there is no genuine issue of material fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. Pt. 6, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

indicated that "additional discovery is necessary to determine the identity of a woman at the accident scene." Both parties were also apparently awaiting expert witness reports. In response to the subsequent motion for summary judgment, petitioner again asserted that additional discovery was necessary. Incredibly, the circuit court concluded that summary judgment was appropriate, despite the distinct shortcomings of discovery recognized by the parties.

This bizarre factual scenario demands further illumination prior to summary disposition. The first person to arrive at the scene of this fatal accident was Brenda Jones, the mother of Patrolman Jones. Her presence was not originally disclosed by respondents, and petitioner discovered her existence only after the juvenile driver of the vehicle was deposed on May 8, 2017, and stated that an unknown woman was "stopped in the middle of the road" and asked him, "'What have you done?'" Mrs. Jones has not been deposed. Her identity was not disclosed until June 2017, and respondents' discovery responses were supplemented to identify her as an individual with discoverable knowledge regarding the subject of the lawsuit. In the absence of her deposition, her knowledge of the circumstances of the initial defective headlight stop and the subsequent pursuit and fatality is unknown.

The second person to arrive at the accident scene was Patrolman Jones. His actions form the entire predicate for petitioner's cause of action against respondents; yet he has not been deposed. Although his report and affidavit are of record, respondent has not had an opportunity to elicit information directly from him regarding the events of that night.[2]

The analysis of immunity claims cannot occur in a vacuum; it must entail sufficient development of factual underpinnings. In applying West Virginia Code § 17C-2-5 in *Peak v. Ratliff*, 185 W.Va. 548, 408 S.E.2d 300, for instance, this Court explained the foundational necessity for determination of whether the officer's act constituted reckless conduct or gross negligence. In syllabus point five of *Peak*, this Court held:

> Where the police are engaged in a vehicular pursuit of a known or suspected law violator, and the pursued vehicle collides with the vehicle of a third party, under W.Va. Code, 17C-2-5 (1971), the pursuing officer is not liable for injuries to the third party arising out of the collision unless the officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision.

The *Peak* examination thus injects yet another factual inquiry regarding whether the officer's action was a substantial factor in the accident. "A fundamental legal principle is that negligence to be actionable must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." Syl. Pt. 2, *McCoy v. Cohen*, 149 W.Va. 197, 140 S.E.2d 427 (1965). This Court also explained in syllabus point three of *McCoy*

---

[2]Petitioner emphasizes multiple elements of factual discrepancy on issues of Patrolman Jones' pursuit. For instance, although he indicated in his written statement that he lost sight of the vehicle with the defective headlight and eventually discontinued the pursuit, a surveillance video taken from a nearby restaurant indicates that, contrary to his statement, he did not deactivate his emergency lights during the pursuit.

that "[p]roximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence."

In *Beckley v. Crabtree*, 189 W.Va. 94, 428 S.E.2d 317 (1993), this Court addressed the employee immunity statute and summarized as follows in syllabus point one:

> West Virginia Code § 29-12A-5(b) provides that employees of political subdivisions are immune from personal tort liability unless "(1)[h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2)[h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3)[l]iability is expressly imposed upon the employee by a provision of this code."

*See also Smith v. Burdette*, 211 W.Va. 477, 481, 566 S.E.2d 614, 618 (2002), *overruled on other grounds by Albert v. City of Wheeling*, 238 W.Va. 129, 792 S.E.2d 628 (2016) (addressing factual predicate necessary for immunity evaluation where city police officer allegedly negligently drove city police car through an intersection and find that "[w]hether Officer Burdette acted negligently under the circumstances is a question of fact, making summary judgment against the City of St. Albans inappropriate."); *Mallamo v. Town of Rivesville*, 197 W.Va. 616, 623, 477 S.E.2d 525, 532 (1996) (holding that summary judgment was precluded where question of material fact existed on immunity claim regarding police conspiracy surrounding shooting and whether such action was outside scope of employment or was accomplished with malicious purpose and in bad faith).

In *Kelley v. City of Williamson,* 221 W.Va. 506, 655 S.E.2d 528 (2007), this Court examined the *Crabtree* precedent and reiterated the statutory approach to questions regarding a city's immunity for negligent actions of an employee: "If, for example, a jury were to conclude that Officer Barnes acted negligently, within the scope of his employment, in handling matters related to Mr. Kelley or Mrs. Kelley, the City would not enjoy immunity and would be liable for Officers Barnes' acts of negligence." *Id.* at 512, 655 S.E.2d at 534.

> The role of this Court is to review this matter de novo for the purpose of determining whether there are any genuine issues of material fact precluding summary judgment. This Court finds that genuine issues of material fact do exist in the present case, and summary judgment was not an appropriate method to dispose of the issues. Before any final resolution can be reached in this case, a jury must determine whether Officer Barnes acted in a negligent manner, thus subjecting the City to liability for his actions under West Virginia Code § 29-12A-4(c)(2), or if his acts were in bad faith, malicious, or wanton and reckless, thus subjecting Officer Barnes to liability under West Virginia Code § 29-12A-5(b). Based upon the foregoing evaluation, this Court reverses the lower court's orders granting summary judgment and remands this matter for further proceedings.

221 W.Va. at 513, 655 S.E.2d at 535.

In *Kelley,* we examined a federal court ruling in *Baker v. Chaplin*, 517 N.W.2d 911 (Minn. 1994), *cert denied*, 513 U.S. 1077 (1995). In *Baker,* the court explained that "[t]his court cannot decide as a matter of law whether the officer's actions in this case were reasonable without a

finding of fact as to what those actions and the surrounding facts and circumstances were." *Id*. at 917. This Court, in *Kelley,* also quoted *Brescher v. Pirez*, 696 So.2d 370 (Fla. Dist. Ct. App.1997), in which the court observed that "[w]here the facts upon which the determination of qualified immunity hinges are in dispute, then those facts may require a jury determination." *Id.* at 374.

Finding an adequate factual predicate for summary judgment, this Court affirmed the circuit court's order in *Sergent v. City of Charleston*, 209 W.Va. 437, 549 S.E.2d 311 (2001). The analysis in that case presents a textbook example of the requisite development of salient facts through the discovery process.

> Applying the *Peak* criteria to the instant facts, we conclude that the conduct of the officers in pursuing the suspects did not amount to negligent, wanton, or reckless conduct. . . . They pursued the suspects for approximately two and one-half to three minutes for a distance of about 2.7 miles, a relatively short period of time and distance. . . . The pursuit took place during daylight hours, and weather conditions were good. The posted speed limit was 55 miles per hour, and the suspect vehicle was traveling at approximately 40 to 45 miles per hour when the accident occurred. The officers remained behind the suspects' vehicle at all times. They did not try to run the suspect vehicle off the road, set up a road block, pass the suspects' vehicle, or otherwise interfere with the driver's ability to control his vehicle. Finally, the suspects were suspected drug dealers who were known to be armed because they had just shot at undercover police officers. In light of these facts, we believe that a rational trier of fact could not find that the officer's conduct in pursuit of the suspects was negligent, wanton, or reckless.

*Id*. at 444-45, 549 S.E.2d at 318-19.

In contrast to the extensive factual detail captured in *Sergent*, the parties in the present case *jointly* recognized the need for additional discovery and *jointly* moved to continue for the explicit purpose of illuminating facts necessary to a proper decision regarding police action. Despite this obvious recognition by the parties, the circuit court denied the joint motion to continue and granted summary judgment, thereby resolving this matter against petitioner without the benefit of the deposition testimony of either Patrolman Jones or his mother. Critically, Patrolman Jones is the individual with the most knowledge of both encounters with the juveniles that night, and his mother was standing beside the road as the young driver climbed the hill after the accident.

The parties clearly recognized the fact-driven nature of a decision underlying the question of immunity and jointly acknowledged the need for further factual development. The circuit court's decision to advance summary resolution at this juncture is indefensible. I therefore respectfully dissent.

11